ROSE G. RUBEN, AMOS S. DEINARD AND NORTHWESTERN NATIONAL BANK AND TRUST COMPANY OF MINNEAPOLIS, A CORPORATION, AS EXECUTORS OF THE ESTATE OF I. H. RUBEN, DECEASED, UNDER THE LAST WILL AND TESTAMENT OF I. H. RUBEN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65887. Promulgated October 6, 1937.

*George B. Leonard, Esq.*, and *Benedict Deinard, Esq.*, for the petitioners.

*Gerald W. Brooks, Esq.*, for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in income tax for 1929 of $15,425.48. The petitioners admit liability for a deficiency of $1,836.44.

The question in issue before the Board is whether the petitioners' decedent derived any taxable income from the payment of $251,000 in 1929 by a corporation, of which he owned one-fourth of the capital stock, in settlement of an equity decree which included not only a money judgment for $351,542.81, but also a decree for rescission and cancellation of 25,716 shares of Miles Theatre Co. stock. The decree was against the petitioners' decedent, two other individuals, a trust estate, and a corporation. The petitioners contend that their decedent derived no taxable income from the payment made.

The facts in the case are contained in a written stipulation of facts signed by counsel.

Some years prior to 1918 M. L. Finkelstein and I. H. Ruben, the petitioners' decedent, were partners in theatrical properties in Minneapolis and St. Paul, operating a circuit of motion picture theatres. On April 29, 1918, William Hamm purchased a one-half interest in all of the theatre holdings of the partnership. This new partnership of Hamm, Finkelstein & Ruben operated until October 1, 1918, on which date the partnership assets were transferred to a common law trust, "Twin City Amusement Estate", which will hereinafter

be referred to as "Twin City." Twin City owned and operated the theatre circuit until May 1, 1926. The beneficial interests in Twin City were as follows:

|                                                              | Percent |
|--------------------------------------------------------------|---------|
| Theo. Hamm Brewing Co., through William Hamm, its trustee     | 50      |
| M. L. Finkelstein                                            | 25      |
| I. H. Ruben                                                  | 25      |

The trustees comprised seven persons, including among others, Hamm, Finkelstein, and Ruben. The declaration of trust specifically provided that any trustee or beneficiary should be indemnified out of the trust estate for any personal liability.

Twin City was determined and held to be a corporation for Federal tax purposes throughout its existence.

On May 1, 1926, Northwest Theatre Circuit, Inc., hereinafter referred to as "Northwest", was incorporated under the laws of Delaware and took over all the assets and business of Twin City and assumed all of Twin City's liabilities. The trustees of Twin City who held title to all of its assets transferred those assets to Northwest in exchange for all of the authorized stock. Hamm, Finkelstein, and Ruben became stockholders of Northwest in the following proportions:

|                           | Percent |
|---------------------------|---------|
| Theo. Hamm Brewing Co     | 50      |
| M. L. Finkelstein         | 25      |
| I. H. Ruben               | 25      |

In December 1914 the partnership composed of Finkelstein and Ruben purchased a controlling interest in the Miles Theatre Co., which operated a theatre in Minneapolis. That partnership, the successor partnership, and the successor trust acquired additional shares of the Miles Theatre Co. from time to time. No dividends were paid by the Miles Theatre Co. to its stockholders from 1914 to 1920. Dividends of 10 percent were paid in April and October 1920 and April 1921, and a 20 percent dividend was paid in September 1921.

In January 1920 H. N. Backus and others who were stockholders, or former stockholders, of the Miles Theatre Co. commenced suit in the United States District Court, District of Minnesota, Fourth Division, against the trustees of Twin City, individually and as trustees, the Miles Theatre Co., New Palace Theatre Co., and others. The suit was a minority stockholders' suit brought in behalf of the Miles Theatre Co. to recover assets claimed to have been wrongfully diverted from the Miles Theatre Co. by the controlling stockholders. As incidental to the claim on behalf of the corporation for an accounting, a large number of persons who had at one time been stockholders in the Miles Theatre Co., but who had sold their stock to Twin City or its predecessor partnership, sought to rescind the sales of their stock and to be restored to their original status as stockholders.

The former stockholders made no claim for damages. They claimed that Twin City and its predecessor partnerships had purchased their stock at improperly inadequate prices.

The litigation continued until April 1929. In an opinion by the court dated November 19, 1929 (23 Fed. (2d) 357), it was held:

(d) The individual defendants [Hamm, Finkelstein, and Ruben] above named are all equally liable and the defendant Twin City Amusement Trust Estate, which is a holding agency for such individual defendants, is equally bound with them. The property of the corporation and that of the individual plaintiffs and interveners, and the gains therefrom, have been commingled and confused with property of the defendants. The sums found due should therefore be a charge and lien upon the property of the defendants held by the Twin City Amusement Trust Estate.

The decree was entered December 24, 1927, and was amended on February 14, 1928, and February 15, 1928. In the decree entered December 24, 1927, it was ordered in part:

2. That plaintiffs, interveners and said company are entitled to recover from defendants Finkelstein, Ruben, Hamm and the Twin City Amusement Trust Estate, and each of them, and said defendants are ordered forthwith to pay to said Trustee for the use and benefit of said company and all persons who may be entitled to share therein, the following sums of money, exclusive of costs and disbursements;

\*     \*     \*     \*     \*     \*     \*

Defendants are ordered to make net payment to said Trustee (exclusive of costs and disbursements) in the aggregate sum of $351,542.81, as of December 1, 1927.

The amendment to the decree of February 15, 1928, made Northwest, which had become in 1926, and was then, the owner of all the theatrical properties formerly owned by Twin City (including all of the Miles Theatre Co. stock ever owned by any of the defendants), an additional party defendant as successor to Twin City and imposed the recovery as a lien against all the assets in the hands of Northwest.

The defendants took an appeal to the Circuit Court of Appeals for the Eighth Circuit from the decree as amended. On April 1, 1929, the litigation was disposed of by stipulation of settlement filed in the case. Under this settlement Northwest was to pay $250,000 cash out of its own funds. As a part consideration for this payment Northwest was to acquire the balance of the outstanding Miles Theatre Co. stock, stated in the decree to be 210 shares. The payment discharged Northwest's liability for the money judgment on behalf of the Miles Theatre Co. in the decree of December 24, 1927, and also discharged its liability to restore and cancel 25,716 shares of the Miles Theatre Co. stock; also, the lien imposed upon all of its property in the decree and in the amendment thereof of February 15, 1928. Northwest paid an additional $1,000 over the amount set in said stipulation. The final decree entered pursuant to the stipulation of settlement on April 13, 1929, provided in part:

All claims of every sort of all the plaintiffs, of all the interveners, of all the other persons who have filed claims herein, of all other stockholders and former stockholders of the Miles Theatre Company, of the Miles Theatre Company, and of H. E. Fryberger, Esq., against each and all of the defendants, existing on the 30th day of March, 1929, relating in any way to said Miles Theatre Company or to any of its stock, have been fully and finally compromised and settled, and are hereby fully and finally discharged and released, and all of the said persons are hereby barred, foreclosed and enjoined from any prosecution of any of said claims hereafter.

A final decree of distribution and also an additional decree entered April 23, 1929, provided specifically for the distribution of the settlement money; $155,000 out of the $251,000 was paid to H. E. Fryberger, solicitor for the plaintiffs, to compensate him for his expenses and services in the litigation; and $96,000 was paid to the stockholders and former stockholders of the Miles Theatre Co., who were parties to the litigation; the amount to be paid each stockholder was determined by an appraisal of the value of his stock.

The corporate minutes of Northwest disclose no corporate action with respect to the settlement of the law suit. No dividend declaration was made in relation to the payment by the corporation of the settlement money.

The decree of December 24, 1927, was duly entered in the United States District Court, but was not docketed. At all times after the rendition of the decree Twin City (and its successor Northwest), was financially able to discharge the obligation imposed by the decree.

In this proceeding the respondent submits that the petitioners' decedent, by reason of owning one-fourth of the capital stock of Northwest, is liable for income tax upon one-fourth of the $251,000 paid by Northwest in settlement of the litigation because of the fact that the petitioners' decedent was liable for the payment of the judgment rendered against him in at least the amount of $62,750.

Where a corporation, pursuant to a contract, pays an obligation of a third party the amount of the payment constitutes taxable income of the person for whose benefit the payment is made. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine Railroad*, 279 U. S. 732. Cf. *United States* v. *Mahoning Coal Railroad Co.*, 51 Fed. (2d) 208; certiorari denied, 285 U. S. 559. The petitioners in this proceeding contend, however, that the payment made by Northwest was not pursuant to a contract; that Northwest was liable for the payment of the judgment; and that in making the payment it liquidated its own obligations.

The whole history of the litigation resulting in the judgment against the petitioners' decedent and others was by reason of acts done principally by Hamm, Finkelstein, and Ruben. It is very evident from the portion of the opinion of the court quoted above that Twin City was made liable for the payment of money by reason of the fact that

it was the "holding agent for such individual defendants", and Northwest was joined as a party defendant because it was the successor of Twin City. We are of the opinion that there is no merit in the contention of the petitioners that Northwest was primarily liable for the payment of the money judgment. The judgment was against all of the defendants. So far as appears the plaintiffs in action might have had execution against any defendant for the entire amount of the judgment.

We are also of the opinion that there is no merit in the contention of the petitioners that the amount of $251,000 paid in the compromise settlement was not pursuant to a contract. Hamm, Finkelstein, and Ruben were the only stockholders of Northwest. Pursuant to an agreement between them Northwest paid the money for the benefit of all parties concerned. In making the payment a liability was paid which rested against each of the stockholders, as well as against Northwest.

In *Blumenthal* v. *Commissioner* (C. C. A., 2d Cir.), 76 Fed. (2d) 507, the court considered whether the settlor of a irrevocable trust was taxable upon income of a trust applied in discharge of her income tax. The trust estate consisted of shares of stock pledged with the bank to secure the taxpayer's bank loan. It was provided in that trust agreement that dividends received on the stock held in trust should be applied in payment of principal and interest on the bank loan. The Circuit Court held that in view of the bank's custom of selling collateral stock first in event of default on a loan before enforcing payment against the debtor, the corpus of the trust was primarily bound to pay the note. When dividends on the stock were applied in payment of the note, the court held that the trust was primarily benefited, not the settlor, and that such income was not taxable to her. The decision of the Second Circuit was reversed by the United States Supreme Court in *Helvering* v. *Blumenthal*, 296 U. S. 552, upon the authority of *Douglas* v. *Willcuts*, 296 U. S. 1.

In this proceeding the respondent has treated one-fourth of the money payment made by Northwest as a dividend to petitioners' decedent and has accordingly subjected it only to surtax. This is the most favorable view that can be taken of the payment. In any event it was a payment made by Northwest to satisfy a liability that rested against each of the stockholders. We are of the opinion that the petitioners' decedent, who owned one-fourth of the capital stock of Northwest, is liable for income tax upon at least one-fourth of the amount paid. We are of the opinion that this is the minimum amount for which he might be held liable for tax. If this amount of money had been paid over to the petitioners' decedent by Northwest, there can be no question but that it would have been a taxable distribution to the recipient. The payment by Northwest in satis-

faction of a debt owing by the petitioners' decedent is the equivalent of a dividend.

The petitioners make the further contention that, since the declaration of trust of Twin City specifically provided that any trustee or beneficiary should be indemnified out of the trust estate for any personal liability, the trust was primarily liable and the petitioners' decedent only secondarily liable so that he was entitled to exoneration from the trust estate. In *Browning* v. *Fidelity Trust Co.* (C. C. A., 3d Cir.); 250 Fed. 321; certiorari denied, 248 U. S. 564, the Circuit Court considered the liability of a trustee for improperly releasing a mortgage lien on property subject to a trust mortgage. A clause in the mortgage provided that the trustee should not be answerable for any act performed by, or misconduct of, any of its agents or employees, or under any circumstances whatsoever, except for bad faith. In discussing the effect of this provision, the court stated:

* * * The plaintiff admits that as a general proposition parties creating a trust can, by their agreement, limit the liability which is imposed by one and accepted by the other, *Tuttle* v. *Gilmore*, 36 N. J. Eq. 617, but maintains, very properly, that the law, dictated by considerations of public policy, determines the point beyond which the parties can not agree to relieve a trustee from liability for breach of a trust duty. For instance, a trustee can not contract for immunity from liability for acts of gross negligence or for acts done in bad faith. Such contracts are invalid because repugnant to law.

We are of the opinion, however, that a sufficient answer to the petitioners' argument on this point is that the decree of the District Court held Hamm, Finkelstein, and Ruben each liable for the judgment debt. By virtue of the decree Ruben was personally liable for the payment of the judgment. The indemnification clause in the declaration of trust can therefore be of no avail to the petitioners in this proceeding.

In this disposition of the case the Board does not overlook the fact that upon the settlement Northwest acquired 210 outstanding shares of Miles Theatre Co. stock. To that extent payment by Northwest was a capital expenditure which added to its assets. If the evidence afforded the basis for determining the cost of these additional shares, a reduction might be made in the amount of $62,750 determined by the respondent to have been realized by Ruben. But the determination of the respondent is prima facie correct. *Welch* v. *Helvering*, 290 U. S. 111; *Wickwire* v. *Reinecke*, 275 U. S. 101; *Austin Co.* v. *Commissioner* (C. C. A., 6th Cir.), 35 Fed. (2d) 910; certiorari denied, 281 U. S. 735. The burden of proof was upon the petitioners to show that the determination of the respondent was incorrect. They have failed to bear such burden.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

Black, Sternhagen, Arundell, Murdock, and Disney dissent.