IRVING SACHS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68647.    Filed June 30, 1959.

*Henry C. Lowenhaupt, Esq.*, and *Norman Barken, Esq.*, for the petitioner.

*Leonard A. Hammes, Esq.*, for the respondent.

#### OPINION.

ATKINS, *Judge:* The respondent determined deficiencies in income tax as follows:

| | |
|---|---:|
| 1951 | $2, 512. 25 |
| 1952 | 4, 328. 77 |
| 1953 | 5, 862. 73 |
| 1954 | 5, 275. 24 |
| 1955 | 3, 672. 70 |

The principal issue is whether amounts paid by a corporation in discharge of a fine imposed upon the petitioner, who was a stockholder and the president of the corporation, for violation of section 145(b), title 26 of the United States Code, constitute taxable income of the petitioner. The only other issue relates to whether a consent, Treasury Form 872, was effective to extend the statute of limitations for the taxable year 1951. A similar question relative to the statute of limitations for the years 1952 and 1953 was conceded by stipulation.

The facts were stipulated and the stipulations are incorporated herein by this reference.

The petitioner is an individual with residence at Clayton, Missouri. Throughout the calendar years 1951 to 1955, inclusive, he was employed in St. Louis, Missouri, as president of Shu-Stiles, Inc., at an

annual compensation varying between $15,600 and $15,900, and was in charge of the conduct of its business and affairs.

For each of the calendar years 1951 through 1955, petitioner filed Federal income tax returns upon the basis of the calendar year and upon the cash receipts and disbursements method of accounting. The return for the year 1951 was filed on March 17, 1952, with the collector of internal revenue for the first district of Missouri.

Shu-Stiles, Inc., is, and at all material times was, a corporation organized and existing under the laws of the State of Missouri. Its principal office and place of business were in the city of St. Louis.

At all material times the stockholders of Shu-Stiles, Inc., the number of shares of stock held by each stockholder, the relationship of the stockholders to petitioner, and the total issued and outstanding shares of stock were as shown in the following schedule:

| Stockholder | Number of shares | Relationship to petitioner |
|---|---|---|
| Irving Sachs | 376.3 | Petitioner |
| Harvey Sachs | 374.5 | Brother |
| Ben Sachs | 349.5 | Brother |
| Louis Sachs | 25.0 | Brother |
| Laura Taylor | 58.8 | None |
| Total issued and outstanding shares | 1,184.1 | |

On March 1, 1951, an indictment against petitioner was filed with the Clerk of the United States District Court for the Eastern District of Missouri. It was charged that the petitioner, who was president of Shu-Stiles, Inc. (and who in 1942 was also treasurer), violated section 145(b), title 26, U.S.C.[1] (sec. 145(b), I.R.C. 1939), in knowingly, willfully, unlawfully, and feloniously attempting to defeat and evade a large part of the tax due and owing by Shu-Stiles, Inc., for the years 1942, 1943, 1944, and 1945 by filing false and fraudulent corporation income, excess profits, and declared value excess-profits tax returns. Petitioner was not charged with any attempt to evade or defeat any income tax which he himself owed.

On March 6, 1951, immediately after petitioner's indictment, at a special meeting of the stockholders of Shu-Stiles, Inc., it was decided that the corporation would engage counsel to represent the

---

[1] Sec. 145. Penalties—

(b) Failure to collect and pay over tax, or attempt to defeat or evade tax.

Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution.

petitioner, and would assume all legal fees and expense as a company expense. This action was taken upon the stated ground that the petitioner's indictment apparently resulted entirely from his action as head of the company. The petitioner was not present at the meeting.

On November 2, 1951, the District Court of the United States for the Eastern District of Missouri, Eastern Division, entered its judgment and commitment which provided in part as follows:

IT IS ADJUDGED that the defendant has been convicted upon his plea of guilty of the offenses of unlawfully attempting to defeat and evade a large part of the tax due and owing by Shu-Stiles, Inc. a Missouri Corporation for the calendar years 1942, 1943, 1944, 1945, respectively; said defendant being President and Treasurer of said corporation as charged in cts. 1, 2, 3, and 4 of indictment and the court having asked the defendant whether he has anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the Court,

IT IS ADJUDGED that the defendant is guilty as charged and convicted.

IT IS ADJUDGED that the defendant make his fine to the United States of America by the payment of the sum of TEN THOUSAND DOLLARS ($10,000.00) as to and under the charge as contained in EACH of counts one, two, three, and four of the indictment herein, and defendant to pay the costs herein, making an aggregate fine of FORTY THOUSAND DOLLARS ($40,000.00) and costs, and that said defendant be imprisoned until payment of said fines and costs, or until said defendant is otherwise discharged as provided by law.

IT IS ADJUDGED that on oral application, defendant be and he is hereby granted stay of execution of aforesaid judgment and sentence for a period of Thirty (30) Days from this date.

On November 30, 1951, the court entered an order referring to its previous judgment, providing in part as follows:

WHEREAS, it now appearing to the Court that defendant can not pay said fines and costs in full on or before December 2, 1951,

Now FOR GOOD CAUSE SHOWN IT IS HEREBY ORDERED that said fine of Forty Thousand Dollars ($40,000.00) and costs be paid in installments as follows:

Five Thousand Dollars ($5,000.00) and costs herein to be paid on or before December 3, 1951; Twenty-five Hundred Dollars ($2500.00) on May 3, 1952; Twenty-five Hundred Dollars ($2500.00) every three months thereafter until the said fines are fully paid.

IT IS FURTHER ORDERED that upon default of any of the installment payments hereinabove stated, defendant shall stand committed until said fines and costs are paid in full, or until said defendant is otherwise discharged as provided by law.

The minutes of a special meeting of the stockholders of Shu-Stiles, Inc., held on November 3, 1951, provided as follows:

After a discussion which took into consideration the fact that all of the acts of the President leading up to his indictment and the assessment of the fine were done for and on behalf of the corporation and, taking into consideration that he, personally, did not in any way benefit from such acts, but merely acted as an officer of the corporation, it was regularly moved and seconded that the

fine assessed against the President, personally, be paid by the corporation, and that all other expenses incurred by the President, personally, incidental to said indictment and to the defense thereof, be assumed and paid by the corporation. Motion carried unanimously, Mr. Irving Sachs being excused from voting.

Shu-Stiles, Inc., paid the fine of $40,000 and the costs of $24.50 imposed upon petitioner, in the amounts and at the times as follows:

| Date of payments | Amount of payments | Yearly totals |
|---|---|---|
| Dec. 3, 1951 | $5,000.00 | |
| Dec. 5, 1951 | 24.50 | |
| Total for 1951 | | $5,024.50 |
| May 2, 1952 | 2,500.00 | |
| July 30, 1952 | 2,500.00 | |
| Nov. 1, 1952 | 2,500.00 | |
| Total for 1952 | | 7,500.00 |
| Feb. 2, 1953 | 2,500.00 | |
| May 1, 1953 | 2,500.00 | |
| July 31, 1953 | 2,500.00 | |
| Oct. 30, 1953 | 2,500.00 | |
| Total for 1953 | | 10,000.00 |
| Feb. 2, 1954 | 2,500.00 | |
| May 3, 1954 | 2,500.00 | |
| Aug. 2, 1954 | 2,500.00 | |
| Nov. 3, 1954 | 2,500.00 | |
| Total for 1954 | | 10,000.00 |
| Feb. 2, 1955 | 2,500.00 | |
| May 3, 1955 | 2,500.00 | |
| July 29, 1955 | 2,500.00 | |
| Total for 1955 | | 7,500.00 |
| Grand total | | 40,024.50 |

The above payments made by Shu-Stiles, Inc., on the fine and costs imposed against petitioner were charged against the surplus account on the corporate books of Shu-Stiles, Inc.

The petitioner did not report any of the amounts paid by Shu-Stiles, Inc., as income in his income tax return for any year. In the notice of deficiencies for the years 1951, 1952, 1953, 1954, and 1955, which was mailed on April 29, 1957, the respondent determined that the amounts of the fines and the court costs assumed and paid by Shu-Stiles, Inc., represented "taxable income" received by petitioner in each of the respective years paid by Shu-Stiles, Inc. Therein the respondent did not assign any particular reason for holding that the amounts in question constituted income to the petitioner in the years paid by the

corporation. However, on brief the position is taken that the amounts paid constituted taxable dividends to the petitioner.

Section 22(a) of the Internal Revenue Code of 1939, provides:

GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

Section 61 of the Internal Revenue Code of 1954, although worded somewhat differently, is equally broad and for present purposes may be considered as in effect the same as section 22(a).

Section 115(a) of the Internal Revenue Code of 1939 provides:

(a) DEFINITION OF DIVIDEND.—The term "dividend" * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * *

Section 316(a) and section 301(b) of the Internal Revenue Code of 1954 are to the same effect.

It has been held many times by the Supreme Court that Congress, in defining "gross income" as broadly as it did in section 22(a), intended to exert the full measure of its taxing power and to tax all gains except those specifically exempted. *Commissioner* v. *Smith*, 324 U.S. 177; *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426; *Commissioner* v. *Lobue*, 351 U.S. 243, and cases cited therein.

It is also well established that if an obligation of a taxpayer is paid by a third party the effect is the same as if the third party had paid the money to the taxpayer who in turn paid his creditor. *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716; *Douglas* v. *Willcuts*, 296 U.S. 1; *United States* v. *Boston & M. R. Co.*, 279 U.S. 732; *United States* v. *Hendler*, 303 U.S. 564; and *Wall* v. *United States*, (C.A. 4) 164 F. 2d 462.

Probably the question arises most frequently where an employer pays an obligation of an employee. See *Old Colony Trust Co.* v. *Commissioner*, *supra*, where the employer paid the income taxes imposed upon the compensation of the employee, and cases cited therein. While the determination of the respondent in the notice of deficiencies in the instant case was not limited by any particular reasoning, on brief he does not argue that the payments of the fine and costs constituted pay-

ments of compensation, but rather that they constituted taxable dividends to the petitioner.

It is well settled that if a corporation pays an obligation of its stockholder or makes a payment for his benefit, the payment may constitute a taxable dividend to the stockholder. *Louis Greenspon*, 23 T.C. 138, affirmed on this issue (C.A. 8) 229 F. 2d 947; *Paramount-Richards Theatres, Inc.* v. *Commissioner*, (C.A. 5) 153 F. 2d 602; *American Properties, Inc.*, 28 T.C. 1100, affirmed per curiam (C.A. 9) 262 F. 2d 150; *Wall* v. *United States, supra; Ruphane B. Iverson*, 29 B.T.A. 863; and *Percy H. Clark*, 31 B.T.A. 1082, affirmed (C.A. 3) 84 F. 2d 725; and this is true even though the formalities of a dividend declaration are not observed, that the distribution is not recorded on the corporate books as such, that it is not in proportion to stock-holdings, or even that some of the stockholders do not participate in its benefits. See *Ruphane B. Iverson, supra; Paramount-Richards Theatres, Inc.* v. *Commissioner, supra; Louis Greenspon, supra;* and *C. W. Murchison*, 32 B.T.A. 32.

The petitioner contends that he was not enriched by the payment by the corporation, that he was merely indemnified against the loss to which he was subjected by his conduct of the corporate affairs. He argues that his net worth was not increased, pointing out that before the fine was imposed he had the same net worth as he had after it was paid. He further argues that as a prerequisite to a holding that income was received, the obligation which was satisfied must have been a debt incurred for a consideration. He illustrates this by stating that if one buys groceries he receives the value of what he has purchased and that this is his gain, offset by the requirement of payment for them; and if another pays for the groceries, the man is richer by the value of the groceries, not the amount of the payment, which only measures the value of the goods furnished.

Thus the petitioner would have us look to the net result of both the imposition of the fine and its payment by the corporation. But we think this view of the petitioner misses the point entirely. While it is true that the filing of a corporate return was an act on behalf of the corporation, it certainly cannot be said to have been a part of his duty to file a false and fradulent return. In so doing he became personally liable for the fine and costs. The corporation was not a party to the criminal proceedings and was not liable for the fine to any extent. The petitioner makes some point of the fact that in the indictment and judgment the petitioner was described as president and treasurer of the corporation. This, however, was merely descriptive and did not in any way make the corporation a party defendant. If the corporation had not paid this amount for him he would have had to pay it out of his own resources. In this connection we note that

under title 18, section 3565, of the U.S.C.[2] this fine was subject to enforcement by execution against the petitioner's property, and that the United States could sue upon the judgment at any time. *Smith* v. *United States*, (C.A. 9) 143 F. 2d 228, certiorari denied 323 U.S. 729. The effect was the same as if the corporation had paid the amounts to the petitioner and he had in turn made payments on his fine and costs. We think that under these circumstances the payments by the corporation resulted in such an enrichment of the petitioner as to render the amounts paid income to the petitioner. The payment by the corporation had the effect of freeing any assets of the petitioner from the charge of the fine. The situation is not essentially different from the payment by a corporation of a tax or other similar liability of a stockholder, the incurrence of which by the stockholder did not result from the receipt of any money or property. We think that under the authorities which we have cited hereinabove, the payments by the corporation constituted the constructive payments of dividends to the petitioner at the times paid. While it is true that the petitioner owned a minority of the stock, about 32 per cent, we think this is not of significance under the circumstances here present. All the rest of the stock, except a small amount, was owned by the petitioner's brothers. The petitioner owned more stock than any one of his brothers, he was the president of the corporation, and it has been stipulated that he was in charge of the conduct of the corporation's business and affairs. The record does not show the amount of earnings and profits which the corporation had available for the payment of taxable dividends, but the burden of proof in this respect is upon the petitioner.

The petitioner relies heavily upon *Ruben* v. *Commissioner*, (C.A. 8) 97 F. 2d 926, reversing 36 B.T.A. 604. In that case certain minority stockholders and former stockholders of a corporation commenced suit against a trust and the taxpayer and others both as trustees and individually to recover assets claimed to have been wrongfully diverted from the corporation by them as controlling stockholders. The trust was the holder of the stock of the corporation in question as well as other property. Also, certain of the former stockholders sought to rescind the sales of their stock. The trial court issued its opinion holding that the taxpayer and the other individuals and the trust were liable for certain sums which should constitute a charge upon the

---

[2] Sec. 3565. Collection and payment of fines and penalties.

In all criminal cases in which judgment or sentence is rendered, imposing the payment of a fine or penalty, whether alone or with any other kind of punishment, such judgment, so far as the fine or penalty is concerned, may be enforced by execution against the property of the defendant in like manner as judgments in civil cases. Where the judgment directs imprisonment until the fine or penalty imposed is paid, the issue of execution on the judgment shall not discharge the defendant from imprisonment until the amount of the judgment is paid.

property held by the trust. The decree provided that the plaintiffs were entitled to recover from the individuals and the trust an amount of approximately $350,000. Thereafter the decree was amended to include an additional party defendant, namely, Northwest Theatre Circuit, Inc., a corporation which had succeeded to the properties of the trust. The case was appealed, but before decision the litigation was disposed of by stipulation of settlement under which Northwest was to pay $250,000 in cash out of its own funds. The payment discharged Northwest from liability for the money judgment as well as the lien imposed upon all its property. We held (36 B.T.A. 604) that the payment by the corporation resulted in the constructive payment of a dividend of one-fourth of the amount of $250,000 to the taxpayer, on the ground that it was a payment by the corporation in satisfaction of a debt of the taxpayer-stockholder.

The Court of Appeals for the Eighth Circuit in reversing our decision took the position that it had not been shown that Northwest was moved to make the compromise settlement to any extent because of its duty to indemnify the taxpayer and the other individuals; that the decree ran against the company which had at all times assets sufficient to respond and make satisfaction; that it compromised in its own interest; that the result as far as the taxpayer was concerned was that he merely escaped from a contested money claim; that the persons who were making the contested claims against the taxpayer ceased and desisted from making them and released him; that they were induced to do so by a payment made by a corporation which had its own interest to serve and which gained affirmative advantages through the settlement; and that the taxpayer was not enriched, but rather that he indirectly as a stockholder shared whatever loss to the company was included in the $250,000 payment.

In the view which the Court of Appeals for the Eighth Circuit took with respect to the factual situation involved in the *Ruben* case, we think that case is not in point in the instant case. Here the corporation was not a party to the criminal proceeding and the fine in question was not imposed upon it. The petitioner alone was liable for the fixed and certain amount of the fine and costs.

We approve the respondent's determination that the petitioner was in receipt of taxable income in each of the years upon the payment by the corporation of installments of his fine and costs. The petitioner has urged that if a dividend was paid, the full amount of the fine and costs constituted a dividend in the year 1951 when the corporation decided to pay the same. We think there is no merit to this view. The action taken by the corporation did not at that time discharge the petitioner's obligation; it was discharged only as payments were made in each of the years.

By amended petition, the petitioner raised the question of whether the assessments of deficiencies for the years 1951, 1952, and 1953 were barred by the provisions of section 6501 of the Internal Revenue Code of 1954, and section 275 of the 1939 Code. The petitioner now concedes that assessment of any deficiencies for 1952 and 1953 is not barred, leaving for consideration this issue only as to the year 1951. For that year we are concerned with section 275 and section 276(b) of the 1939 Code.[3] See sec. 7851(a)(6)(A), I.R.C. 1954.

The petitioner filed his income tax return for the year 1951 on March 17, 1952, reporting gross income of $15,600, which did not include the item of $5,024.50 paid in that year by Shu-Stiles, Inc., on the fine and costs imposed upon the petitioner. The notice of deficiencies was filed on April 29, 1957.

We have held hereinabove that the $5,024.50 payment on the fine and costs constituted gross income to petitioner in the year 1951. Therefore, the petitioner omitted from gross income an amount in excess of 25 per cent of the amount of gross income stated in his return. Accordingly, the 5-year rule applied, and the period for assessment, in the absence of any consent, would have expired by March 17, 1957.

On December 7, 1956, the petitioner and the respondent entered into an agreement in writing, Form 872, "Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax Under the Provisions of Section 275(c) of the 1939 Code," providing among other things:

That the amount of any income, excess profits, or war profits taxes due under any return (or returns) made by or on behalf of the above-named taxpayer [the petitioner] * * * for the taxable year (or years) ended December 31, 1951, under existing acts, or under prior revenue acts, may be assessed at any time on or before June 30, 1958, except that, if a notice of deficiency in tax is sent to said taxpayer (or taxpayers) by registered mail on or before said

---

[3] SEC. 275 PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276—

(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

     *      *      *      *      *      *      *

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

SEC. 276 SAME—EXCEPTIONS.

(b) WAIVER.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

date, then the time for making any assessment as aforesaid shall be extended beyond the said date by the number of days during which the Commissioner is prohibited from making an assessment and for sixty days thereafter.

The petitioner refers to the fact that in the consent reference is made to "taxes due under any return * * * made by or on behalf of the * * * taxpayer * * * for the taxable year ended December 31, 1951," and contends that since the item of income sought to be taxed, namely, the amount of the fine and costs paid by the corporation, was not included in his return, the tax sought to be collected is not a tax due "under any return made by" petitioner.

This argument is based on a very strained interpretation of a few words in the consent agreement taken out of context and is contrary to the plain meaning of the entire consent agreement and the clear intention of the parties. The words of the caption of the agreement "Under the Provisions of Section 275(c) of the 1939 Code" clearly indicate that the parties understood and agreed that the waiver was to be effective as against the type of income provided for in section 275(c), which is gross income omitted from the return as filed. It should also be noted that United States Treasury Form 872 not only refers to taxes due "under any return" but also to those due "under existing acts, or under prior revenue acts." We think there can be no serious question that if income is properly due under existing acts, or under prior revenue acts, it would then properly be "due under any return" within the meaning of the consent.

*Decision will be entered for the respondent.*