*Decisions will be entered under Rule 50.*

L. L. SILVERSTEIN, ESTATE OF ROSE L. SILVERSTEIN, DECEASED, L. L. SILVERSTEIN, EXECUTOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84182. Filed May 26, 1961.

---

*Jack White, Esq.,* for the petitioners.
*Wallace M. Wright, Esq.,* for the respondent.

DRENNEN, *Judge:* Respondent determined deficiencies in the joint income tax of L. L. Silverstein and Rose L. Silverstein for 1955 and 1956 in the amounts of $2,632.61 and $2,575.22, respectively. The only issue is whether payments of $10,000 made by a corporation of which L. L. Silverstein was a one-third owner on prior years' tax liabilities of L. L. Silverstein are taxable to L. L. Silverstein as constructive dividends.

### FINDINGS OF FACT.

The stipulated facts are so found.

L. L. Silverstein and Rose L. Silverstein were husband and wife during the year 1955 and filed a joint Federal income tax return with the director of internal revenue for the district of South Carolina. Rose L. Silverstein died March 26, 1956; however, L. L. Silverstein (hereinafter referred to as petitioner) filed a joint Federal income tax return for the year 1956 with the director of internal revenue for the district of South Carolina under the provisions of section 6013(a)(3) of the Internal Revenue Code of 1954.

Petitioner was engaged, during the years 1942 to 1947, inclusive, in the operation of a jewelry business in Charleston, South Carolina, as an individual proprietorship. During those years, petitioner incurred substantial liabilities for unpaid Federal income and miscellaneous (jeweler's excise) taxes, additions to tax, and interest.

On July 6, 1950, two notices of Federal tax liens were filed by the collector of internal revenue in the office of the Register of Mesne Conveyance for Charleston County, South Carolina, one evidencing a total assessment in income tax against petitioner in the amount of $243,477.75, and the other evidencing a total assessment in excise tax against Leroy Jewelry Company, L. Leroy Silverstein, owner, in the amount of $111,441.54.

On December 2, 1952, petitioner submitted offers in compromise to settle the above-mentioned tax liabilities for a total of $100,000, the offers being based on petitioner's financial inability to pay the full amount due. On May 23, 1953, petitioner submitted amended offers in compromise increasing the total amount offered to $125,000. At the time the original offers in compromise were submitted, $75,000 cash was paid, and under the terms of the amended offers in compromise submitted May 23, the balance of $50,000 was to be paid in installments of $10,000 each, payable 1 year after the offers were accepted and in each of the succeeding 4 years.

On July 23, 1953, petitioner further amended the offers in compromise, expressly agreeing to the payment of interest on deferred installment payments not paid when due.

Petitioner was notified that both offers in compromise were accepted by the Commissioner of Internal Revenue by letter dated August 21, 1953.

On June 30, 1953, Leroy Jewelry Company, Inc. (hereinafter referred to as Leroy), was organized with 208 shares of its capital stock being issued on July 1, 1953, to petitioner and 1 qualifying share being issued to each of his sons-in-law, Marshall Berg and Haskell Widelitz. Petitioner's stock certificate was canceled and new certificates were issued to petitioner, Berg, and Widelitz on July 2, 1953, with the result that each thereafter held 70 shares of the total 210 shares of stock issued and outstanding. Thereafter the corporation carried on the business formerly conducted by petitioner as a sole proprietorship.

The balance sheet filed with Leroy's income tax return for its fiscal year ending June 30, 1954, listed assets totaling $175,515.59, liabilities totaling $154,515.59, and capital stock totaling $21,000, as of July 1, 1953.[1]

Petitioner's Federal tax liabilities were never carried on the books of Leroy as a liability.

The first $10,000 installment on the balance of petitioner's tax liabilities, under the terms of the accepted offers in compromise, was paid by Leroy on July 30, 1955. This payment was charged by Leroy to an expense account of taxes and license. The payment of the second installment was also made by Leroy on July 31, 1956. This payment was originally charged on Leroy's books to loans payable but subsequently, by means of an adjusting journal entry, the loans payable account was credited with the $10,000, an asset account designated goodwill was debited in the amount of $9,000, and an expense account of interest was debited in the amount of $1,000.

The earned surplus of Leroy, as reflected by its Federal income tax returns, at June 30, 1956, was $35,271.87 and at June 30, 1957, was $43,184.26.

Leroy borrowed $20,000 from the South Carolina National Bank, Charleston, South Carolina, evidenced by a collateral note dated March 19, 1956, signed by Leroy as promissor and guaranteed by petitioner, Berg, and Widelitz. The collateral securing this note was stated on the face thereof to be equity in cash value of life insurance assigned to the bank, having a cash value of approximately $24,000. Most of the indicated cash surrender value was from life insurance policies owned by petitioner and the balance was from life insurance policies owned by Berg and Widelitz. Renewal notes in the same amount, executed and endorsed in the same manner, were given from

---

[1] Petitioner's witness, Berg, testified that the assets and liabilities listed were the assets and liabilities of the sole proprietorship, but no documentary evidence was introduced to show this to be a fact.

time to time, and the principal amount of the loan had not been paid at the time of trial. This $20,000 obligation was carried on the books of Leroy as loans payable.

The entire balance of the amounts due under the offers in compromise of petitioner's tax liabilities was paid and released of record by June 1958.

### ULTIMATE FINDINGS.

The payment by Leroy of petitioner's liabilities for Federal taxes constituted constructive dividends to petitioner, and the amount of $10,000 is taxable to petitioners as ordinary income in each of the years 1955 and 1956.

### OPINION.

Petitioner relies on two points to avoid having the payments made by Leroy on petitioner's individual income tax liabilities taxed to petitioner as income. The first is that the payments made by Leroy were made with funds borrowed on the security of the stockholders' individual endorsement and collateral and therefore did not constitute taxable income to petitioner, and the second, and in the alternative, is that the payments made by Leroy were made in discharge of a liability of petitioner which was assumed by the corporation along with other debts when the business owned by petitioner as a proprietorship was incorporated in a nontaxable reorganization.

Petitioner's first argument, to the effect that the payments were made with funds borrowed by the individual stockholders rather than the corporation, is not supported by the evidence. It is stipulated that the two $10,000 installments here in issue were paid by Leroy. There is no documentary evidence that the $20,000 borrowed from the South Carolina National Bank and evidenced by the collateral notes described in our Findings of Fact was used to make these payments, but even assuming that it was, this would not support petitioner's argument. It is clear from the notes themselves and from the bank records that the corporation was the primary obligor on the loan and that the three individuals were simply guarantors. The fact that the collateral used to secure the loan was provided by the individuals does not make them the primary obligors on the loan. The balance sheets filed with Leroy's income tax returns indicate that Leroy had sufficient assets to pay the loan had the bank elected to call for payment. Furthermore, the loan was treated by all parties concerned as the primary obligation of Leroy.

Petitioner's second argument is likewise unsupported by evidence, except the testimony of Berg, petitioner's only witness, that when the corporation took over the assets and liabilities of petitioner's

business in exchange for its stock it also assumed liability for payment of the balance due on petitioner's individual tax liabilities. The documentary evidence does not bear this out, and Berg admitted that this liability was never carried on Leroy's books. The offers in compromise fixing the amount of this liability were made between respondent and petitioner and there is no evidence that Leroy had anything to do therewith. In fact, Leroy was incorporated and took over the business before the offers in compromise were accepted by respondent. Had the tax liabilities not been paid respondent would have had to look first to petitioner for payment and then to the assets which petitioner had owned prior to the release of the tax liens filed against petitioner. It is true that the assets transferred by petitioner to Leroy were subject to these tax liens but respondent could not have proceeded directly against Leroy for payment of the tax liabilities but only against those assets which were subject to the liens.

While petitioner does not directly argue the point, we have given consideration to whether these payments might be considered payment of Leroy's own liabilities under the rationale of *Ruben* v. *Commissioner*, 97 F. 2d 926 (C.A. 8, 1938), reversing 36 B.T.A. 604 (1937). That case involved settlement of a suit against a corporation and its shareholders with the corporation paying the entire amount of the settlement, which settlement also released the shareholders from any further claim and liability to the plaintiff in the action. The Court of Appeals found that no taxable benefit accrued to the shareholders inasmuch as the corporation acted for itself and entirely in its own interest in making payment on the claim. However, we do not think this case is controlled by the *Ruben* case because here there was no direct liability on the part of the corporation for payment of the tax liabilities. This distinction is made clear by the Court of Appeals for the Eighth Circuit in its own decision in *Sachs* v. *Commissioner*, 277 F. 2d 879 (1960), affirming 32 T.C. 815 (1959), certiorari denied 364 U.S. 833 (1960). The fact that the liens for the tax liabilities may have attached to some of Leroy's assets does not, in our opinion, bring this case within the scope of the majority opinion in the *Ruben* case. This distinction is also pointed out in the dissenting opinion in the *Ruben* case.

Section 61 of the Internal Revenue Code of 1954 is broad in scope and includes in gross income all gains, profits, and income from whatever source, including dividends. The term "dividend" means any distribution made by a corporation to its shareholders whether in money or in other property out of its earnings and profits. It is well established that if an obligation of a taxpayer is paid by a third party the effect is the same as if the third party had paid the money to the taxpayer who in turn paid his creditor. *Old Colony Tr. Co.* v. *Commissioner*, 279

U.S. 716 (1929); *Wall* v. *United States*, 164 F. 2d 462 (C.A. 4, 1947).

It is equally well settled that if a corporation pays an obligation of its stockholder or makes a payment for his benefit, the payment made constitutes a taxable dividend to the stockholder, and this is true even though there has been no formal declaration of a dividend, the distribution is not reported on the corporate books as such, it is not in proportion to stockholdings, and some of the stockholders do not participate in its benefits. *Hash* v. *Commissioner*, 273 F. 2d 248 (C.A. 4, 1959), affirming a Memorandum Opinion of this Court; *Sachs* v. *Commissioner, supra; Wall* v. *United States, supra; Paramount-Richards Th.* v. *Commissioner*, 153 F. 2d 602 (C.A. 5, 1946), affirming a Memorandum Opinion of this Court; and *C. W. Murchison*, 32 B.T.A. 32 (1935).

Here an obligation of petitioner was paid by the corporation of which he was a stockholder and petitioner received the economic benefit of having his tax liabilities reduced in this manner. Consequently, petitioner is taxable on the payments made by the corporation.

*Decision will be entered for the respondent.*