Charles A. Weil and Joan S. Weil v. Commissioner. Edmond Weil, Inc. v. Commissioner.
Weil v. Commissioner
Docket Nos. 3775-65, 3776-65.
United States Tax Court
T.C. Memo 1967-78; 1967 Tax Ct. Memo LEXIS 183; 26 T.C.M. (CCH) 388; T.C.M. (RIA) 67078; April 14, 1967
Charles A. Weil, pro se, 130 E. 75th St., New York, N. Y., for the petitioners. Lawrence Shongut and Stanley J. Goldberg, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The respondent has determined deficiencies in the individual petitioners' income tax for the calendar year 1960 in the amount of $1,555.18 and in the income tax of the corporate petitioner in the amount of $606.48 for the calendar year 1957 as a consequence of a decreased net operating *184 loss carryback from the year 1960. Charles A. Weil has represented himself and his wife in this proceeding in Docket No. 3775-65, and having been the sole stockholder and president of Edmond Weil, Inc., during the years 1957 through 1960, inclusive, he has also represented that corporation (Docket No. 3776-65). Petitioners have not contested, or have conceded several of the adjustments made by the Commissioner in his statutory deficiency notices, leaving for our consideration the following issues: (1) As to the corporate defendant, Edmond Weil, Inc., whether expenditures made by it in defense of an alleged traffic violation of Charles A. Weil are deductible by the corporation as an ordinary and necessary business expense; (2) if not, then, as to the individual petitioners, whether those same payments resulted in a constructive dividend to Charles A. Weil; (3) as to the individual petitioners, whether the deduction of $1,500 claimed by them on the gift of an oil painting to the University of Maine in 1960 was excessive to the extent of $600. Some of the facts have been stipulated and are included herein by this reference. Facts and Opinion Issues (1) and (2) Edmond *185 Weil, Inc., filed its corporate income tax returns for the calendar years 1957 and 1960 with the district director of internal revenue, Manhattan District, New York. Petitioners Charles A. Weil and Joan S. Weil filed their joint income tax return for the calendar year 1960 with the district director of internal revenue, Manhattan District, New York. Charles A. Weil was president, sole stockholder and in control of Edmond Weil, Inc., during the years 1957 to 1960, inclusive. The individual petitioners lived at 130 East 75th Street, New York City and the corporate petitioner maintained its office and place of business at 100 Gold Street in New York City which is downtown and near the Brooklyn Bridge. The corporate petitioner was an importer and exporter of hides and skins. During the years 1957 through 1960 Charles A. Weil, hereinafter called Charles, did not own an automobile but habitually used, for both business and pleasure, an automobile which was owned by the corporate petitioner and kept in a garage near Charles' home during nonbusiness hours and in a garage near the corporate office during business hours. Charles habitually drove the car to and from work. A Mr. Lowengart, *186 whose first name is not disclosed by the record, was one of the corporation's customers. He was in the tannery business and had offices in New York City. Charles had known Lowengart for years and had sponsored him for membership in a golf club on Long Island. On a certain day in the fall of 1959, and not further identified except that it was probably in the month of October, Charles had an appointment to play golf with Lowengart at the club on Long Island. As he was proceeding from his home to the club to keep this appointment, and while he was driving on the Long Island expressway, Charles was arrested by a radar team and charged with speeding. Charles believed that he had been charged unjustly and that the radar method of detection was inaccurate, consequently he decided to contest the case. In defense of the case Morton Povman, an attorney and J. Kelly Johnson, an electronic engineer, were employed, and the trial in about March 1960 resulted in a dismissal of the charge. It is stipulated that Edmond Weil, Inc., paid the $475 in fees incurred by Charles in connection with the defense against the speeding charge. [1]
*187 Charles seems to contend that since Lowengart was a substantial client of the corporation that any and every contact with him became a business meeting with all attendant expenses properly payable by the corporation and deductible by it as a business expense. He seems to contend further that since he was often required to drive the car in connection with the corporation's business and since a conviction for speeding might endanger his driver's license, that the defense of any such charge was an ordinary and necessary business expense of the corporation. In light of the facts of this case this is almost like arguing that the cost of a winter coat for its president is an ordinary and necessary corporate business expense, for without the coat the president would have to stay home in the cold weather and the corporate business would suffer. We can think of few more purely personal activities than driving from one's home to one's country club for a game of golf. Charles does not contend that the principal purpose of the particular game in the fall of 1959 was to enable him to discuss some specific transaction with Lowengart, or even to discuss business in general, but rather relies *188 upon the much broader proposition that Lowengart was a good customer of the corporation and that nothing further was required. Since we cannot subscribe to this view of "ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business," under section 162, [2] we hold that the $450 in fees are not deductible by the corporation. Cf. Kornhauser v. United States, 276 U.S. 145; United States v. Gilmore, 372 U.S. 39; Challenge Manufacturing Co., 37 T.C. 650 (Issue 5) and cases there cited; Merritt M. Meredith, 47 T.C. 441 (January 31, 1967). It is clear from what we have said above that we regard Charles' activities on the day in question in October 1959 as purely personal, and therefore it follows that any and all expenses incurred by him in connection with those activities were personal to him. Since the corporation paid those expenses on behalf of Charles (who was its president and sole stockholder) we conclude and hold that this resulted in a constructive dividend to Charles. United States v. Durant, 324 F. 2d 859; Irving Sachs, 32 T.C. 815, *189 affd. 277 F. 2d 879 (C.A. 8), certiorari denied 364 U.S. 833; Frank J. Matula, Jr., 40 T.C. 914. Facts and Opinion Issue (3) In 1960 the individual petitioners gave an oil painting entitled "The Mill" by Frederick Ede to the University of Maine, and on their joint return for that year claimed deduction fof a charitable contribution under section 170(a)(1) in the amount of $1,500 based upon such gift. The respondent has disallowed $600 of this claimed deduction on the authority of section 1.170-1(c)(1), Income Tax Regs., contending that the fair market value of the painting at the time of the gift was $900. This painting had originally been acquired by Joan S. Weil's father but neither the date nor the acquisition price are revealed by the record. He gave it to Joan in 1952 when he broke up housekeeping. Joan expressed no opinion as to the value of the painting at any time. Herbert Chase, an appraiser and art dealer since about 1930 and a member of the American Society of Appraisers was called as a witness by petitioner. He described the painting as an oil, about 24 inches by 29 1/2 inches in size (framed *190 size 35 by 39 inches) which he had examined in petitioner's home in about November 1960 and which he had then appraised as "reasonably worth $1,500. in today's market" but he could recall no further details of the picture. Chase did not know much about Frederick Ede. He did not know his nationality, the usual subjects of his paintings or of any gallery that had ever exhibited any of them or sold any of them, or of any sales whatsoever of any Ede painting. Chase could not describe the subject matter, the shape or color of the painting in question or the manner of its execution (impasto). He had no prospective buyer in mind when he made the appraisal but stated simply that having been asked to appraise it, and having been informed that his appraisal would be used to establish the amount of a charitable deduction, that he had examined the painting and concluded that it was a very nice one, a "home run," with a fair market value of $1,500. The record contains no evidence of the value of the Ede painting in question other than the opinion of Herbert Chase which is described above. Under the Tax Court Rules of Practice, Rule No. 32, burden of proof is on petitioners to establish that *191 the Frederick Ede painting in question had a fair market value at the date of gift in excess of $900. Herbert Chase's unfamiliarity with the painting, the artist and his other works allows us to assign no weight to his opinion and consequently the respondent's determination of a $900 value is sustained. Decision will be entered for the respondent. Footnotes
1. In the statutory notices of deficiency respondent has disallowed such fees only in the amount of $450 and has determined that such amount was realized taxable income to Charles in 1960. Neither party has mentioned the $25 discrepancy between the fees as stipulated and as shown of record and we conclude that the stipulation is in error and will consider it as showing total fees of $450 rather than $475.↩
2. All references are to the Internal Revenue Code of 1954.↩