HARRY MAKRANSKY AND HELEN MAKRANSKY, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 83212, 83356, 83357, 83463, 83464, 86007, 86008, Filed May 29, 1961.
86381, 86490.

*Bernard Wolfman, Esq.*, for the petitioners in Docket No. 83212.
*Albert B. Zink, Esq.*, for the petitioners in Docket Nos. 83463, 83464, 86381, and 86490.
*Herman H. Krekstein, Esq.*, for the petitioners in Docket Nos. 83356, 83357, 86007, and 86008.
*William J. Hagan, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioners' income tax and additions to tax for the years 1952 through 1956, as follows:

---

[1] Proceedings of the following petitioners are consolidated herewith: Emanuel Moss and Sylvia Moss, Docket Nos. 83356 and 86008; Hilda B. Schneider, Docket Nos. 83357 and 86007; Trust Under Deed of Joseph Binenstock (Deceased), Girard Trust Corn Exchange Bank, Theodora B. Jacobs, Sylvia B. Moss, Hilda B. Schneider (formerly Hilda B. Raines), Helen B. Makransky, John Tait, and Albert Barnes Zink, Trustees, Docket Nos. 83463 and 86490; and Allen C. Jacobs and Theodora B. Jacobs, Docket Nos. 83464 and 86381.

| | Docket No. | Petitioner | Deficiency | Addition to tax, sec. 291 (a), I.R.C. 1939 |
|---|---|---|---|---|
| *Year* | | | | |
| 1952 | 83212 | Harry Makransky and Helen Makransky | $37,994.82 | |
| 1953 | | | 7,423.01 | |
| 1952 | 83356 | | 38,523.34 | |
| 1953 | | | 7,821.35 | |
| 1954 | 86008 | Emanuel Moss and Sylvia Moss | 5,029.13 | |
| 1955 | | | 4,574.23 | |
| 1956 | | | 890.40 | |
| 1952 | 83357 | | 37,487.33 | |
| 1953 | | | 6,311.34 | |
| 1954 | 86007 | Hilda B. Schneider | 3,526.45 | |
| 1955 | | | 2,505.20 | |
| 1956 | | | 224.80 | |
| *Taxable year ended Sept. 30—* | | | | |
| 1952 | 83463 | | 202,252.31 | |
| 1953 | | | 36,539.00 | |
| 1954 | | Trust Under Deed of Joseph Binenstock (deceased), etc | 28,525.06 | |
| 1955 | 86490 | | 21,318.00 | |
| 1956 | | | 1,432.29 | |
| *Year* | | | | |
| 1952 | 83464 | | [1] 39,080.96 | $9,770.24 |
| 1953 | | | 6,246.00 | 1,561.50 |
| 1954 | | Allen C. Jacobs and Theodora B. Jacobs | 5,002.34 | |
| 1955 | 86381 | | 3,463.60 | |
| 1956 | | | 572.32 | |

[1] Part of this asserted deficiency arises from the inclusion in petitioners' income of $4,431.78 as a result of treating as income, merchandise inventory held by petitioners. Petitioners are not now contesting this issue.

A trust had as its corpus all of the capital stock of a corporation. The settlor of the trust (who was also president of the corporation and a trustee) was insolvent and had a substantial outstanding obligation to the Commonwealth of Pennsylvania. The beneficiaries of the trust were the four daughters of the settlor. The trust caused the corporation to make distributions to the settlor and to his estate after his demise. These distributions were used by the settlor and the estate in discharge of the settlor's obligation to the Commonwealth of Pennsylvania. The main issues are:

(1) Whether the petitioner trust is liable for tax on the said distributions, and

(2) Whether the petitioner beneficiaries of the trust are liable for tax on the said distributions.

All of the facts have been stipulated. They are found accordingly.

Petitioners Harry Makransky and Helen B. Makransky, Emanuel Moss and Sylvia Moss, Allen C. Jacobs and Theodora B. Jacobs, are husband and wife as they appear. All filed joint income tax returns for the years 1952 through 1956 with the district director of internal revenue at Philadelphia, Pennsylvania.

Petitioner Hilda B. Schneider (formerly Raines) filed individual income tax returns for the calendar years 1952 and 1953 with the said district director of internal revenue. She did not file income tax returns for the calendar years 1954, 1955, or 1956.

Petitioner Trust Under Deed of Joseph Binenstock (Deceased) was established by indenture of trust dated August 29, 1947. Fiduciary income tax returns were filed for its taxable years ended September 30, 1952, 1953, 1954, 1955, and 1956 [2] with the said district director of internal revenue. This petitioner will hereafter be referred to as the trust.

Petitioners Helen Makransky, Sylvia Moss, Theodora Jacobs, and Hilda Schneider are all daughters of Joseph Binenstock, the settlor of the trust, and life beneficiaries under the trust instrument. Their husbands are joined where joint returns have been filed.

The trust was created by indenture in 1947 between Joseph Binenstock, hereafter sometimes called Binenstock, as settlor and Binenstock, John Tait, Albert Barnes Zink, the beneficiaries, and the Girard Trust Company,[3] as trustees. Under the terms of the indenture, Binenstock transferred to the trust 325 shares constituting all of the issued and outstanding stock of J. A. Dougherty & Sons, Inc., Distillers, hereinafter sometimes referred to as the corporation. Said shares constituted the entire trust corpus during the years here in question.

The trust instrument by its terms was irrevocable. It directed the trustees to divide the principal into 4 equal shares, to hold 1 such share for each of the daughters, and to pay each daughter the net income from her share in monthly or quarterly installments for life, and thence to her children, if any, with further provisions for distribution of income and corpus to settlor's grandchildren, if any, and, if not, to a designated charity.

Between April 1948 and November 1951, dividends totaling $113,-028.50 were declared and paid by the corporation to the trustees. During the same period a total of $105,671.08 was distributed to the beneficiaries. No other distributions were made by the trustees to the beneficiaries.

In April 1950 a judgment was entered against Binenstock in favor of the Commonwealth of Pennsylvania in the Court of Common Pleas No. 1 of Philadelphia County and affirmed by the Supreme Court of Pennsylvania in March 1951,[4] in the amount of $864,924.21 as a result of an escheat proceeding. This case had been initiated in about 1943.

Binenstock was insolvent and unable to pay this liability. He had rendered himself insolvent by the transfer to the trust under the 1947 trust agreement, and had remained insolvent since that time. The liability to the Commonwealth of Pennsylvania described above arose

---

[2] Although it appears that some of these returns were not timely filed, no question of delinquency of the trust returns has been raised in this case.

[3] The Girard Trust Corn Exchange Bank is successor by merger to the Girard Trust Company.

[4] *Commonwealth* v. *Binenstock*, 366 Pa. 519, 77 A. 2d 628. Prior appeals, *Commonwealth* v. *Binenstock*, 358 Pa. 644, 57 A. 2d 884. *Commonwealth* v. *Binenstock*, 348 Pa. 610, 36 A. 2d 333. See also *Tucker* v. *Binenstock*, 310 Pa. 254, 165 Atl. 247.

prior to the transfer to the trustees. The transfer to the trust was made without any consideration being given for it.

Immediately after the affirmance by the Supreme Court of Pennsylvania of the foregoing judgment, the Commonwealth of Pennsylvania threatened to institute an action to set aside the trust under the Pennsylvania Uniform Fraudulent Conveyance Act.[5] Binenstock and the Commonwealth proposed to enter an agreement to settle the said judgment for $756,000 payable over about 3 years. This settlement agreement was conditioned upon the execution and delivery by the trustees of a security agreement under which they would, in effect, agree to preserve the assets of the trust pending performance of Binenstock's obligations under the compromise agreement, and provided the beneficiaries and Binenstock, in their individual capacities, would further agree not to resist whatever attempt the Commonwealth might make to set aside the trust in case Binenstock should fail to fulfill his obligations.

Binenstock did not have sufficient funds to meet the payments required under the contemplated compromise agreement and he applied to the corporation for a loan with which to meet the obligation to the Commonwealth, offering to secure payment by pledging such real estate, mortgages, and stock as he then owned.

Three of the trustees under the trust agreement petitioned the Orphans' Court of Philadelphia County for authority to compromise Binenstock's liability.

In September 1951 the Orphans' Court appointed a master to take testimony and report his conclusions of law in connection with the trustees' petition. The other trustees, i.e., the beneficiaries and Binenstock, filed a waiver of objection to this petition in said Court. The master, after notice to all immediate parties in interest, to the parents of minor remaindermen in being and to the charitable contingent remainderman, held a hearing at which testimony was taken and evidence received. The master found the following conclusions of law:

Unless the settlement agreement between the Commonwealth and Binenstock is entered into there is a strong probability that the deed of trust will be set aside under the Fraudulent Conveyance Act * * *.

It is for the best interest of the trust estate and its beneficiaries for the trustees to execute the compromise or security agreement and to permit [the corporation] to make loans to * * * Binenstock in such amounts as may be required by him for payments under his settlement agreement with the Commonwealth * * *

On consideration of the master's report and his recommendations, the Orphans' Court approved said report, authorized the trustees to execute the agreement with the Commonwealth, and authorized the trustees—

---

[5] Fraudulent Conveyance Act of May 21, 1921, Pub. L. 1045, Pa. Stat. tit. 39, sec. 351, *et seq.*

to permit [the corporation] to lend to * * * Binenstock * * * or his executors or administrators, the amounts of principal, aggregating $756,000, and interest that will from time to time fall due * * *.

* * * The loans authorized by the preceding paragraph * * * shall be made from time to time as the payments to the Commonwealth are about to accrue, and they shall be so made as to ensure the use of the proceeds for the purpose intended, i.e. the discharge of the Commonwealth's claim under its agreement with Binenstock.

The said court further provided that—

The loans authorized * * * shall be on the following terms in addition to any others the trustees may see fit to impose:

1. Each loan shall be evidenced by a demand note of Binenstock or his executors or administrators.

2. As security for repayment of the loans, Binenstock shall deliver to [the corporation]:

a. [Mortgages to the corporation on eight parcels of real estate located in Pennsylvania and New Jersey].

b. [An assignment to the corporation of an existing $2,000 mortgage, an existing $10,000 mortgage and of 16 shares of stock in other corporations.]

*      *      *      *      *      *      *

* * * None of the trustees shall consent to the issuance of any shares of the capital stock of [the corporation] now held as treasury shares unless the issuance of such shares is approved in writing by all of the trustees.

In October 1951 Binenstock and the corporation entered into a written agreement which recited that he had applied to the corporation for a loan of $756,000 and further recited:

AND WHEREAS [Binenstock] has executed and delivered to the [corporation] as security for the payment of said obligation a certain Bond, Warrant, and Mortgage in the principal amount of $800,000.00 * * * and has also delivered an Assignment of a certain Bond and Mortgage.

AND WHEREAS [Binenstock] has requested the [corporation] to make the loan in periodic advances each to be secured by a promissory demand note as follows:— $250,000.00 immediately, plus $15,000.00 per month, together with interest as required at the rate of 6%.

The agreement was signed by Binenstock in his personal capacity, and by him as president of the corporation.

Contemporaneously with the execution of the above agreement, Binenstock pledged and delivered to the corporation a bond and warrant, and mortgage in the principal amount of $800,000 covering the real estate described in the decree of the Orphans' Court, above. He also pledged and assigned to the corporation the $2,000 mortgage and the 16 corporate shares mentioned in said decree. The value of Binenstock's equity in the above property was about $130,000. The mortgage created in favor of the corporation was junior in lien to the record judgment in favor of the Commonwealth.

In October 1951 Binenstock entered into an agreement with the Commonwealth in which he agreed to pay $756,000 in installments as the settlement of the amount of the judgment in favor of the Com-

monwealth described above. Of the amount to be paid, $250,000 was to be paid at the time of signing the agreement and the balance was to be paid in 34 consecutive monthly installments beginning in October 1951. The first 33 monthly payments were to be $15,000 each and the final one $11,000. Interest on the unpaid balance was to be at the rate of 6 percent per year. The agreement also provided that if Binenstock should die prior to the completion of payment, his personal representatives would be bound by the provisions of the agreement.

In October 1951, contemporaneously with the execution of the agreement with the Commonwealth, the trustees, in accord with the decree of the Orphans' Court, entered into an agreement with the Commonwealth under which the trustees agreed that they would preserve the assets of the trust pending performance of Binenstock's obligations under the compromise agreement. This agreement stated in the preamble:

WHEREAS, the Trust Principals recognize that a successful legal attack by the Commonwealth upon the validity of said Indenture of Trust would destroy the Trust and render the assets of the Trust subject to the demand of the Commonwealth under its aforesaid judgment against * * * Binenstock, with the result that the cestui que trustant under said Indenture of Trust would receive no benefits whatever, * * *

Binenstock, the beneficiaries, Zink, Tait, and Girard Trust Corn Exchange Bank signed this agreement as trustees.

Binenstock died March 12, 1952.

Pursuant to these agreements, the corporation distributed amounts to Binenstock and to his estate. The amounts were as follows:

To Binenstock:

| | | |
|---|---|---|
| 1951 (Oct. 31 to Dec. 31) | $176, 385. 08 | |
| 1952 (Jan. 1 to Mar. 3) | 30, 000. 00 | |
| Subtotal | 206, 385. 08 | |
| Less: Salary | 5, 742. 77 | $200, 642. 31 |

To Binenstock's estate:

| | |
|---|---|
| 1952 (Apr. 1 to Sept. 4) | 45, 000. 00 |

*Total paid during trust fiscal year ended Sept. 30—*

| | |
|---|---|
| 1952 | 245, 642. 31 |
| 1953 | 60, 000. 00 |
| 1954 | 52, 500. 00 |
| 1955 | 45, 000. 00 |
| 1956 | 7, 500. 00 |
| Total payments Oct. 31, 1951, to Sept. 30, 1956 | 410, 642. 31 |

[It is to be noted the payments listed above are less than those provided for in the compromise agreement and the total amount as provided in the compromise agreement had not been paid by the end of the last year before us.]

These amounts totaling $410,642.31 in the foregoing table were paid by corporate checks drawn to the order of Binenstock and delivered

by him to the Commonwealth and after his death to the order of his estate and delivered by his executors to the Commonwealth. None of the amounts paid by the corporation pursuant to its agreement with Binenstock have been repaid to the corporation or to the trust.

On their several income tax returns for the years 1952 through 1956 none of the petitioners herein reported as income any of the amounts paid by the corporation under its agreement with Binenstock. Respondent determined deficiencies in the trust income in the amounts of the corporation's advancements to Binenstock for each of the years in question. Respondent determined the beneficiaries' deficiencies by increasing their income by their proportionate shares of such advances for each of the years in question.[6]

In Docket No. 83464 respondent determined that there were additions to tax for failure to file returns on time under section 291(a), I.R.C. 1939.

Respondent also made other determinations of deficiency in several of the dockets, some of which were placed in issue by the petitions. No evidence was presented concerning these issues and they are considered abandoned by petitioners.

There is some argument by the trust and the beneficiaries that the trust was revocable and on this premise they base an argument that the distributions by the corporation were taxable to the grantor under section 166(1) of the Internal Revenue Code of 1939[7] and section 676(a) of the Internal Revenue Code of 1954.[8] The argument is that the transfer was voidable at the instance of the Commonwealth and if the Commonwealth chose to have the transfer set aside, title to the corpus would be revested in the grantor.

The trust instrument provides:

It is STIPULATED and AGREED that this Trust shall be irrevocable, and shall not be subject to change, alteration, amendment, or termination by the "SETTLOR," nor shall any property forming a part of corpus of the Trust be subject to withdrawal by any beneficiary * * *

Clearly, this is an irrevocable trust. The settlor reserved no power in himself by the act of creation to resume his former position. See 4

---

[6] Petitioners Harry Makransky and Helen Makransky are not before the Court for the years 1954 through 1956.

[7] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

[8] SEC. 676. POWER TO REVOKE.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a non-adverse party, or both.

Bogert, Trusts and Trustees, sec. 993. He could not revoke it. Strictly speaking, neither could the Commonwealth revoke the trust or cause revocation of the trust. Although it could reach the trust assets to settle its claim, it could not do so by revocation. The fact that it could reach some of the trust assets under a remedy provided by State law does not change the character of the trust.

Two things are to be noted. First, no financial data of the corporation has been stipulated or introduced in evidence. As a result it is not possible to tell whether the payments in question were out of earnings and profits or out of capital. Respondent has determined that the payments were dividends taxable as ordinary income. None of the petitioners argue that the corporation's payments were not made out of earnings and profits. In the absence of proof and argument by petitioners, we assume that the payments were made out of corporate earnings and profits. *R. M. Walker,* 26 B.T.A. 494. Second, the collateral of about $130,000 which Binenstock put up has been taken into account. Payments made out of these assets were subtracted from total payments to the Commonwealth before the liability in question was determined by respondent. Thus, the first payment to be made to the Commonwealth was $250,000; in 1951 the corporation distributed $176,385.08 to Binenstock to be paid to the Commonwealth. The difference was paid to the Commonwealth out of Binenstock's assets.

Respondent argues the trust, as sole stockholder, was the recipient of dividend income although paid to Binenstock. We think this is well established by the evidence. The objective to be gained by the payments was the preservation of the corpus of the trust. The trust had received the stock at a time when the Commonwealth's escheat action was pending against Binenstock. While it cannot be said there was a pending lien against the stock, there was certainly an infirmity in the trust's title in that it was vulnerable to a fraudulent conveyance action in the event the pending suit resulted in judgment against Binenstock.[9]

---

[9] We note in passing that the master's report recites that the Commonwealth's escheator testified that the Commonwealth's suit was first brought in 1937. The suit which resulted in the 1951 judgment was first brought in 1943, appealed to the Pennsylvania Supreme Court in 1944, remitted for further proceedings, appealed again in 1948 to the Pennsylvania Supreme Court, reversed and remanded for a new trial. The final judgment was entered in 1951, as noted. The transfer to the trust took place in 1947. In Pennsylvania, as elsewhere, in determining whether a conveyance is fraudulent, contingent liability has the same status as fixed liability. *Fidelity Trust Co.* v. *Union Nat. Bank of Pittsburgh,* 313 Pa. 467, 169 Atl. 209; *People's Savings & Dime Bank & Trust Co.* v. *Scott,* 303 Pa. 294, 154 Atl. 489.

Pennsylvania's Uniform Fraudulent Conveyance Act, Pa. Stat. tit. 39, sec 351 *et seq.,* provides, in part:

Sec. 354. Conveyances by insolvent

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

When some 5 years later the escheat action did result in a judgment against Binenstock, it was the threat of a fraudulent conveyance action that caused the trust to have the corporation save it from such an attack. The corporation's payments were to serve the interest of the trust, its sole stockholder. The proceedings before the Orphans' Court, including the petition, the master's report, the court's order, and the court-authorized compromise agreement, all show a recognition on the part of all concerned, including the trustees and beneficiaries, that the trust, the sole stockholder, would be benefited by the corporation's payments.

The payments here made by the corporation for the benefit of its stockholder, constitute dividend distributions to the trust. *Irving Sachs*, 32 T.C. 815, affd. 277 F. 2d 879.

It is of no consequence that the parties observed the hollow ritual of "loans" to the insolvent debtor. The withdrawals were not initiated by him or controlled by him, and were not for his benefit. They were not bona fide loans. *William C. Baird*, 25 T.C. 387. This is made abundantly clear by the continuance of the payments after Binenstock's death when the executors of his estate were made the conduit for the payments to the State of Pennsylvania.

We hold the amounts the corporation paid to the State of Pennsylvania, through Binenstock and his estate, constitute dividend income to the trust.

The trust and respondent argue that the net income of the trust was unconditionally required to be distributed to the beneficiaries, and because of this mandatory requirement, the beneficiaries, not the trust, are ultimately taxable on these amounts. The beneficiaries argue that in no event is any income arising from the corporate payments to the Commonwealth taxable to them because none was distributed or distributable to them. We agree with the beneficiaries.

The trust instrument provides that the trustees are to—

collect the dividends, interest, rents, issues and profits [from the trust corpus] and after paying all expenses incident to the management of the Trust, to distribute and apply the net income and principal * * * upon the trusts, terms and conditions following.

* * * * * * *

* * * to pay over and distribute to each of said daughters of the "SETTLOR" the net income from her respective share of the principal, in monthly or quarterly installments, for and during the term of her natural life. Should the share of income due any daughter of the "SETTLOR" be less than Five thousand

---

,Sec. 359. ,Rights of creditors whose claims have matured

₁(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as *against any person* except a purchaser for fair consideration * * *

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim ; or

(b)₁ Disregard the conveyance, and attach or levy execution upon the property conveyed. [Emphasis added.]

($5,000.00) Dollars in any one calendar year, then the deficiency shall be paid out of principal, it being the intent of the "SETTLOR" that each daughter shall receive a minimum of Five thousand ($5,000.00) Dollars annually from this Trust and that principal shall be encroached upon to the extent necessary to provide said minimum annual sum.

Although provision is made for the accumulation or income payable to minor remaindermen in the discretion of the trustees, the four life tenants were surviving during the years here in question. In addition, the trust instrument gave to the trustees the power—

To do all other acts which, in their judgment, may be necessary or appropriate for the proper and advantageous management, investment and distribution of the Trust estate.

Section 161 of the Internal Revenue Code of 1939 and section 641 of the Internal Revenue Code of 1954 impose the same taxes on trust income as are imposed on individuals. Section 162(b) of the Internal Revenue Code of 1939 and section 651 of the Internal Revenue Code of 1954 provide as a deduction in computing the taxable income of the trust the amount of income for the taxable year which is required to be distributed currently. Section 162(b) of the Internal Revenue Code of 1939 and section 652 of the Internal Revenue Code of 1954 require that the amount of income for the taxable year required to be distributed currently shall be included in the gross income of the beneficiaries to whom the income is required to be distributed. We have demonstrated above that the trust instrument requires all net income of the trust to be distributed monthly or quarterly. Do the amounts which we have found are income to the trust, qualify as income required to be distributed currently? We think not.

Section 643(b) of the Internal Revenue Code of 1954 and the regulations under section 162(d) of the Internal Revenue Code of 1939, and Regulations 118, sec. 39.162–2(a)(3), provide that the term "income" is to be given meaning with reference to the trust instrument and local law. Under the trust instrument here, the amount available for distribution to the beneficiaries and thus includible in their gross income was the "net income" of the trust. Although the trust instrument does not specifically define "net income," it does provide that the trustees shall collect the income generated by the trust corpus, pay "all expenses incident to the management of the Trust" and apply the remainder, which it terms "net income," to the purposes thereafter set forth. The trust instrument further empowers the trustees to act as they judge necessary for the proper management of the trust estate.

The trustees filed action in the Orphans' Court and received the court's approval to cause the corporation to pay the Commonwealth. This was an administrative action. The trustees did not "collect" income generated by the corpus for distribution to the beneficiaries but rather all of the parties with the sanction of the Orphans' Court,

caused corporate income to be used to preserve the value of the trust assets. This is neither income which becomes payable to the beneficiaries, sec. 162(b), I.R.C. 1939, and Regs. 118, sec. 39.162–2(b)(3), nor is it an accumulation of income as such under section 661 of the Internal Revenue Code of 1954. We therefore conclude the beneficiaries are not liable for tax on these amounts.

We hold that respondent correctly determined deficiencies against the trust for the years in question. We further hold that respondent incorrectly included the corporate distributions in the beneficiaries' income for the years in question.

In Docket No. 83464 respondent determined petitioners, Allen C. and Theodora B. Jacobs, failed to file returns within the prescribed time. They have presented no evidence on this issue. Additions to their tax under section 291(a) of the Internal Revenue Code of 1939 for the years 1952 and 1953 are hereby approved.

Because of adjustments not here in issue in some dockets, the decisions in these consolidated cases are as follows:

> *Decisions will be entered for the petitioners in Docket Nos. 83356 and 83357.*
>
> *Decisions will be entered for the respondent in Docket Nos. 83463 and 86490.*
>
> *Decisions will be entered under Rule 50 in Docket Nos. 83212, 83464, 86007, 86008, and 86381.*