O. W. BROTHERS and ALIENE BROTHERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent O.W. BROTHERS & ASSOCIATES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brothers v. Commissioner
Docket Nos. 658-71, 659-71.
United States Tax Court
T.C. Memo 1974-56; 1974 Tax Ct. Memo LEXIS 261; 33 T.C.M. (CCH) 269; T.C.M. (RIA) 74056; March 7, 1974, Filed. *261 Petitioners O.W. and Aliene Brothers received distributions in 1963, 1964 and 1965 from O. W. Brothers' wholly owned corporation O.W. Brothers & Associates which they did not report as dividends on their Federal income tax returns since the distributions were claimed to be loans, assets held in some form of trust for the corporation, or campaign contributions and payments to local tax officials made by O. W. Brothers on behalf of the corporation. Held: Amount of dividend income determined. Petitioner O.W. Brothers & Associates purchased an airplane in 1965 for business purposes and expended certain amounts in that year in connection with the acquisition, maintenance and operation of said plane and the flight instruction of O. W. Brothers. Held: Amount of allowable airplane expenses determined. Thomas B. Moore, for the petitioners. Marion Malone and George W. McDonald, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined the following deficiencies in the Federal income tax of the petitioners: Petitioners
Docket No.
Year
Deficiency O. W. Brothers and Aliene Brothers
658-71
1963
$11,761.13
1964
2,623.54
1965
10,283.08
O.W. Brothers & Associates
659-71
1965
2,284.69
Certain *262 concessions [1] having been made in both dockets, with respect to the individual petitioners O. W. and Aliene Brothers, the issue presented for our decision is whether certain distributions to these petitioners from O. W. Brothers' wholly owned corporation O.W. Brothers & Associates are taxable to them as dividend income. With respect to the corporate petitioner O.W. Brothers & Associates, we are required to determine the amount of allowable expenses under section 162 [2] relating to an airplane purchased by that corporation. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners O. W. Brothers *263 and Aliene Brothers are husband and wife who, at the time of the filing of the petition herein, maintained their legal residence in Fullerton, California. They filed their joint Federal income tax returns for the calendar years 1963, 1964 and 1965 with the district director of internal revenue at Los Angeles, California. Petitioner O.W. Brothers & Associates (hereinafter Associates) is a corporation organized under the laws of California with its principal office at Fullerton, California. Associates filed its Federal corporate income tax return for the calendar year 1965 with the district director of internal revenue at Los Angeles, California. Prior to and throughout the years in issue, O. W. Brothers (hereinafter referred to as Brothers) was engaged in the business of tax consulting which involved the appraisals of real and personal property and negotiations with county tax assessors and their assistants in connection with real and personal property ad valorem tax assessments. Prior to September 16, 1963, this business was carried on by Brothers as a sole proprietor. Beginning October 1, 1963, the business was operated by Associates which was organized in September, 1963. *264 At all times pertinent Brothers was president and sole shareholder of Associates. Associates employed the cash basis of accounting, using a single entry method of bookkeeping. From its incorporation in 1963 until early 1965, Associates' office was maintained at the Brothers' home. As part of Associates' business in handling the property taxes of its clients, Brothers made payments to local tax officials in return for their assistance in obtaining clients and receiving favorable assessments under arrangements based on the amount of tax savings to or fees paid by the corporation's clients. Brothers also made gifts or campaign contributions to local tax officials in hopes of receiving favorable consideration in tax problems handled by Associates. Payments were made by Brothers' handing cash in an envelope to the official without anyone else present. In the operation of the business, Brothers was required to maintain substantial amounts of cash in his home. Brothers considered this cash kept in his home to be that of the corporation. In some instances he would use portions of it for travel expenses if he could not reach a bank. The means of obtaining the cash for use in the business *265 and for payment to local tax officials was the drawing of checks on the corporate account either to cash, Brothers, or his wife. Brothers received proceeds in the amount of $16,000 from two checks drawn on the corporation's account on December 31, 1963. This $16,000 was eventually placed in a sealed envelope, bearing the inscription "O.W. Brothers & Associates," and placed in a safe deposit box at Security First National Bank maintained by Brothers and his wife. This money was originally withdrawn from the corporation because Brothers feared its attachment by his creditors in another business venture and because he wished to maintain sufficient cash to continue his business. Later the purpose in keeping the $16,000 cash was to provide an emergency operating fund for the business. In April, 1967, at Brothers' request, his daughter withdrew the envelope intact from the safe deposit box and delivered it to Brothers' father who transmitted the $16,000, along with other sums, to Brothers who, with his wife, was then in Mexico. This $16,000 was later used to pay corporate obligations of Associates.
From time to time for personal convenience Brothers would use corporate funds to meet *266 personal needs. This was done in an informal manner, at such times as Brothers felt he needed the money, by drawing checks on the corporate account. In one instance in October, 1963, Brothers received $2,000 from the corporation which he repaid through salary deductions. In late December, 1963, Brothers withdrew by check $11,000 in corporate funds in order to meet personal obligations. When depositing these sums in his personal checking account Brothers noted in the checkbook that they were loans from the corporation. Brothers never made any payment specifically designated as repayment of this $11,000 withdrawal. However, in October, 1965, Brothers' wife paid a corporate obligation in the amount of $15,500 out of their joint personal checking account. On its 1965 Federal corporate income tax return, Associates reported that loans to stockholders at the beginning of the taxable year amounted to $8,000 and at the end amounted to $15,500. During the years in question Associates declared no dividends. For the years in issue Brothers and his wife received, either actually or constructively, the following amounts from the corporation: Checks written to or for:
1963
1964
1965 Cash
[3] *267 $33,800.00
$12,964.56
[4] $15,017.50
O. W. Brothers
7,478.50
36,335.19
33,956.59
Aliene Brothers
1,965.24
10,355.48
4,766.43
Personal expense
97.82
965.78
2,771.84
Income reported by Associates but never deposited
2,486.02
$43,341.56
$60,621.01
[5] $58,998.38 In July, 1965, Associates purchased an airplane for $32,500 for use in its business. The purchase price was paid with $17,000 of corporate funds and with $15,500 proceeds from a loan to the corporation by the Security First National Bank. This loan was secured by a chattel mortgage on the airplane. The filing fee for the mortgage was $7.50 which was paid by a charge to the corporation's checking account. In October, 1965, this loan was paid in full with funds out of O. W. and Aliene Brothers' joint personal checking account. During 1965 Associates paid for the flight training of Brothers and for the operation and maintenance expenses for this airplane. In March, 1967, Brothers was indicted on counts of perjury in preparing local property tax returns and of bribery of a public official. In January, 1968, he pleaded nolo contendere to five counts of the indictment *268 upon which judgment of conviction was entered. In his notice of deficiency to petitioners O. W. and Aliene Brothers, the respondent determined, among other adjustments which were agreed to, that these petitioners had received unreported dividend income in the taxable years 1963, 1964 and 1965 in the amounts of $26,041.31, $5,747.73, and $21,293.58, respectively. The respondent determined such amounts by totaling the checks written on the corporate account to these petitioners or to cash, the personal expenses of the petitioners paid by the corporation, constructive income from use of corporate property, and unaccounted for corporate income. From this total, amounts accounted for were subtracted to arrive at the dividend income for each year. The respondent's "Computation of Dividends" as set out in his deficiency notice is as follows: Checks to:
1963
1964
1965 Cash
$33,800.00
$12,964.56
$15,017.50
O. W. Brothers
7,478.50
36,335.19
33,956.59
Aliene Brothers
1,965.24
10,355.48
4,766.43
Personal expense [6]
97.82
965.78
3,571.84
Airplane [7]
910.00
Income reported (by Associates) - not deposited
2,486.02
Total
$43,341.56
$60,621.01
$60,708.38
Net salary checks - O. W. Brothers
(9,545.00)
(38,590.80)
(28,845.40)
- Aliene Brothers
(1,185.24)
( 4,993.60)
( 4,569.40)
Rent (Ck 114-135)
(780.00)
Repayment of loan made 10/11/65 (Ck 430)
( 5,000.00)
Purchase of auto & furniture (ck 172)
( 5,288.88)
Travel & Entertainment by cash
(1,290.01)
Total
$30,541.31
$11,747.73
$22,293.58
Less: Amounts accounted for [8]
4,500.00
6,000.00
1,000.00
Dividends
$26,041.31
$ 5,747.73
$21,293.58
*269 After taking all concessions with respect to O. W. and Aliene Brothers into account, there remains in issue dividend income in the amounts of $25,943.49, $4,781.95 and $16,811.74 for the taxable years 1963, 1964 and 1965, respectively. For each of the years in issue, the allowable medical deduction will be controlled by the adjusted gross income, which in turn depends on the decision reached herein. In his notice of deficiency to the corporate petitioner Associates, the respondent determined, among other adjustments agreed to by this petitioner, that the deductions for expenses attributable *270 to the airplane claimed in the amount of $4,891.33 and for depreciation on the plane claimed in the amount of $3,046.86 and an investment credit claimed in the amount of $2,275 should be disallowed on the basis of section 262 to the extent these amounts represented personal use of the airplane by Brothers. [9]
OPINION The first issue requires our determination of the amount of dividend income received by petitioners O. W. and Aliene Brothers from their wholly owned corporation O.W. Brothers & Associates during the last 3 months of 1963 and the years of 1964 and 1965. During the years in issue Brothers and his wife made withdrawals from the corporation which were not accounted for to the satisfaction of the respondent. Certain issues having been conceded by both parties, the respondent herein contends that the unaccounted for withdrawals remaining is issue represent dividend income to said petitioners in the amounts of $25,943.49, $4,781.95 and $16,811.74 for the taxable years *271 1963, 1964 and 1965, respectively. These petitioners, on the other hand, contend that they have accounted for these withdrawals in issue by showing them to have been assets held in trust for the corporation, loans, or payments to local tax officials to aid the business of the corporation. Specifically, Brothers and his wife claim to account for these withdrawals as follows: 1963:
$16,000
Held for corporation in the Brothers' safe deposit box
11,000
Loan to Brothers
15,100
Payments to local tax officials
$42,100
1964:
$14,900
Campaign contributions and payments to local tax officials
1965:
$22,500
Campaign contributions and payments to local tax officials
Withdrawals from a corporation by its shareholders or shareholder may be considered dividend income for tax purposes without a formal declaration of dividends by the corporation. Commissioner v. Makransky, 321 F.2d 598, 601 (C.A. 3, 1963), affirming 36 T.C. 446 (1961); Paramount-Richards Th. v. Commissioner, 153 F.2d 602, 604 (C.A. 5, 1946), affirming a Memorandum Opinion of this Court. The respondent's determination that the withdrawals in question constitute dividends and hence taxable income is presumptively correct and the petitioners have *272 the burden of proving that such withdrawals were other than dividends.[10]Rule 142, Tax Court Rules of Practice and Procedure.
With respect to the taxable year 1963, Brothers and his wife first contend that the $16,000 received from corporate funds and placed in a sealed envelope bearing the corporate name in their safe deposit box was not income to them because that money was held in some sort of trust for the corporation. Just as we believe that the intent of the parties concerning the nature of the transaction controls in the loan versus dividend question, see Spheeris v. Commissioner, 284 F.2d 928 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 366 U.S. 944 (1961), we also believe it should *273 determine the outcome here. After considering all the facts and circumstances relating to the $16,000 withdrawal, we think the petitioner Brothers has shown by a fair preponderance of the evidence that no part of the $16,000 was considered to be his personally but rather it was held for use by the corporation. Actually Brothers did not use any of this money for personal needs during the years in question, even though it was within his personal control. When the money was withdrawn from the safe deposit box by Brothers' daughter in 1967 and sent to him at his request, the envelope containing the money and bearing the corporate name written on it was intact. Brothers used this money in later years to pay off corporate obligations. We cannot say that he actually appropriated or intended to appropriate this money for personal use during the years in question. Thus we conclude that this $16,000 withdrawal was not dividend income to petitioners during the years in question. To determine whether there was a bona fide loan of $11,000 to Brothers in 1963, we must look to the intent of the parties at the time of withdrawal as evidenced by the testimony of the witnesses and the objective *274 manifestations of intent. Spheeris v. Commissioner, supra, at 931.The question as to the true character of the withdrawals is one of fact which must be determined from consideration of all the relevant facts and circumstances. Jacob M. Kaplan, 43 T.C. 580, 595 (1965). Substantial control of the corporation by the withdrawing party invites careful scrutiny of the situation. Jacob M. Kaplan, supra, at 595; Elliott J. Roschuni, 29 T.C. 1193, 1202 (1958), affirmed per curiam 271 F.2d 267 (C.A. 5, 1959), certiorari denied 362 U.S. 988 (1960). In the instant case, Brothers withdrew $11,000 from corporate funds to meet personal obligations. While petitioner did show that this $11,000 withdrawal was noted in his personal checkbook as a loan from the corporation, he did not show that the withdrawal was evidenced by any promissory note, secured by collateral, bore interest or set a fixed date for repayment. Under such circumstances, we can only assume that these unmentioned objective manifestations of intent of creating a bona fide loan were not present. Associates declared no dividends, but withdrawals were made by Brothers from his closely held corporation as he needed funds. Brothers' *275 testimony to the effect that in paying a corporate obligation in the amount of $15,500 in 1965 he knew that he owed money to the corporation does not indicate to us that he meant to repay this $11,000 withdrawal or that he considered that withdrawal a loan. This conclusion is buttressed by the fact that on Associates' Federal income tax return for 1965, Brothers reported only $8,000 as loans to shareholders at the beginning of the taxable year and $15,500 at the end. In light of the above-mentioned factors, we believe that this $11,000 was not a bona fide loan, but was dividend income in 1963. With respect to the claimed payments to local tax officials, we have found as a fact that any such payments were made in furtherance of Associates' business of tax consulting and consequently were not expenses of Brothers himself but were those of Associates. The respondent contends that such payments have not been substantiated by the petitioners except in the amounts allowed in the deficiency notice. Brothers testified that he made these payments in cash only without any recording of the amounts paid. As a result no documentary evidence was presented to buttress his testimony with respect *276 to the amounts paid. While Brothers' testimony was positive as to amounts and dates of payment, in face of conflicting testimony and evidence presented by respondent's witnesses, we are not inclined to accept the amount of payments claimed to have been made. However, after considering the record as a whole, we think that payments were actually made in excess of those allowed by the respondent. Exercising our best judgment, but bearing heavily against petitioners, we conclude that 50 percent of the claimed payments should be allowed as made by Brothers on behalf of Associates. Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930). We have determined the amount of dividend income to Brothers and his wife for each of the years in question by totaling the amounts received from the corporation in each year and subtracting therefrom all accounted for corporate funds. In addition to the $11,000 withdrawal which we determined to be a dividend and not a loan and the reimbursements of personal expense conceded by petitioners to be dividends, any unaccounted for receipts constitute dividend income to Brothers and his wife. Accordingly, we conclude that O. W. and Aliene Brothers received dividend *277 income from Associates in the taxable years 1963, 1964 and 1965 in the amounts of $11,097.82, $4,297.73 and $9,333.58, respectively. [11] *278 As respondent has *279 conceded that Associates is entitled to expenses attributable to the airplane, the second issue requires our determination only of the amount of these allowable expenses. Although petitioner Associates stated on brief that there was in issue the entire amount of the deficiency, it apparently is asserting that it is entitled to only $3,091.01 [12] of the $4,891.33 claimed as airplane expense on its return. Associates has presented checks and receipts for charges to its checking account which total $3,091.01. The respondent concedes that Associates is entitled to deduct $3,083.51 of the amount claimed but contends that a deduction in the amount of $7.50 evidenced by a duplicate copy of the charge to the corporate account should not be allowed, apparently because such record is not adequate substantiation. At trial, Brothers explained that this $7.50 represented a charge for the cost of the filing fee for the chattel mortgage securing the bank loan used *280 to purchase the airplane. The respondent apparently did not deem it necessary to cross-examine Brothers on the reason for the use of the duplicate copy of the charge as substantiation and we do not find it a worthy objection in light of his testimony and the documentation of the charge in his diary. [13]
Since Associates has presented no substantiation for or testimony relating to the remaining portion of the $4,891.33 claimed as airplane expense on the return, we conclude that Associates is entitled to a deduction of $3,091.01 for airplane expense in 1965, in addition to the conceded depreciation allowance and investment *281 credit. Decisions will be entered under Rule 155. Footnotes
1. We are hesitant to state precisely what concessions have been made by the parties. Their briefs are not totally clear in this regard. However, to permit as succinct and clear a statement as possible of the matters remaining in issue, we will determine and state the concessions as best we can. ↩
2. All Code references herein are to the Internal Revenue Code of 1954, as amended and as applicable to the taxable year involved, unless otherwise indicated. ↩
3. This amount includes a check for $9,000 written to the order of Ross Baxter, the proceeds of which were delivered to Brothers. 4. This amount includes a check for $1,000 written to the order of J. Tooke who returned the cash to Brothers. ↩
5. This total reflects the twin concessions by respondent particularized in footnotes 6 and 7. ↩
6. The respondent has conceded that $800 of the $3,571.84 item of personal expense reimbursement for 1965 paid by Associates for flight instruction of Brothers is not dividend income. Petitioners O. W. and Aliene Brothers have conceded that the remaining reimbursements for personal expenses in the amounts of $97.82, $965.78 and $2,771.84 were income to them in 1963, 1964 and 1965, respectively. ↩
7. The respondent has conceded that Brothers received no constructive income ($910) from personal use of the airplane. ↩
8. These amounts represent the sums allowed by respondent as payments to local tax officials. ↩
9. The respondent has conceded that Associates is entitled to these amounts claimed on its Federal corporate income tax return, except that he concedes only $3,083.51 as the allowable amount of airplane expenses. ↩
10. We note that no evidence has been presented from which we can determine whether the withdrawals in question were or were not made out of earnings and profits. However, petitioners have not argued that such withdrawals were not made out of earnings and profits. Consequently, we assume that earnings and profits were sufficient to cover any withdrawals during the years in issue. Harry Makransky, 36 T.C. 446, 453 (1961), affd. 321 F.2d 598↩ (C.A. 3, 1963). 11. We determined the dividend income by the following computation: 1963
1964
1965 Amounts received by petitioners
$43,341.56
$60,621.01
$5,998.38
Salary, etc. allowed by respondent
(12,800.25)
(48,873.28)
(38,414.80)
Dividend from personal expense
(97.82)
(965.78)
(2,771.84)
Dividend - not a loan
(11,000.00)
-0-
-0-
Corporate funds in safe deposit box
(16,000.00)
-0-
-0-
3,443.49
10,781.95
17,811.74
Payments to local tax officials
(7,550.00)
(7,450.00)
(11,250.00)
Dividend - amounts unaccounted for
$ -0-
$ 3,331.95
$ 6,561.74
Dividend Income:
1963
1964
1965
Dividend - not a loan
$11,000.00
$ -0-
$ -0-
Dividend from personal expense
97.82
965.78
2,771.84
Dividend - unaccounted for withdrawals
-0-
3,331.95
6,561.74
Total dividend income
$11,097.82
$ 4,297.73
$ 9,333.58
With regard to the taxable year 1963 we realize it is implicit in our conclusion that, because of the amount of corporate funds received and the amount thereof previously accounted for, a portion of the payment to local tax officials for 1963 in the amount of $4,106.51 ($7,550 minus $3,443.49) was not made directly out of corporate funds received by the petitioner Brothers in that year. Whether this amount was paid out of his personal funds or came perhaps from his salary withdrawals, we do not know. Whether this $4,106.51 should be characterized as a contribution to capital or as an advance to the corporation we also do not know; however there is no indication anywhere in the record that this $4,106.51 was part of those withdrawals held to be dividends in 1963. While we are, at times, sympathetic to those taxpayers who unknowingly are oftentimes hamstrung by the tax laws for the informal way in which they operate their wholly owned corporations, still we must apply the law to the facts as they stand. When a shareholder receives funds from his corporation and applies them to his personal use, as the petitioner did here with the $11,000 used to meet a personal obligation and the $97.82 reimbursement for personal expenses, these funds are dividends to that shareholder notwithstanding the fact that during the same taxable year in a separate transaction he has made a contribution to capital or an advance to the corporation. The latter two transactions do not offset any dividend income received. 12. In its request for findings of fact, Associates stated that $3,090.78 was the proper deduction for the airplane expenses. We assume that the difference is attributable to an error in addition in totaling the substantiated amounts. ↩
13. While neither party has mentioned the character of this $7.50 expenditure, we note that generally the cost of obtaining a loan or a mortgage is capital in nature and hence must be deducted over the life of the loan. See Detroit Consolidated Theatres v. Commissioner, 133 F.2d 200 (C.A. 6, 1942), affirming per curiam a Memorandum Opinion of the Board of Tax Appeals. However, when the loan or mortgage is paid in full in the same taxable year in which it was taken out, these costs should be deductible in full in that year. Cf. Herbert Enoch, 57 T.C. 781, 794-795↩ (1972).