CARL and TOSHI NAKAYAMA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. JOE and TERRY NAKAYAMA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Nakayama v. Commissioner
Docket Nos. 382-71, 383-71.
United States Tax Court
T.C. Memo 1975-143; 1975 Tax Ct. Memo LEXIS 228; 34 T.C.M. (CCH) 675; T.C.M. (RIA) 750143; May 15, 1975, Filed Towner Leeper, for the petitioners. Paul Waldman, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners for the designated calendar years in the following amounts: Docket No.
Petitioners
Year
Deficiency
382-71
Carl T. Nakayama &
1964
$ 609.55
Toshi Y. Nakayama
1965
2,131.40
383-71
Joe H. Nakayama &
1964
5,820.59
Terry Nakayama
1965
561.36
Due to their common issues of law and fact these cases were consolidated pursuant to a joint motion of the parties. We are asked to decide one issue: whether certain personal expenses of the petitioners paid by a corporation in their control constitute distributions with respect to the corporation's stock? FINDINGS OF *229 FACT Certain facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At all times relevant here petitioners Carl T. Nakayama (Carl) and Toshi Y. Nakayama (Toshi), husband and wife, resided in Las Cruces, New Mexico. They timely filed joint Federal income tax returns for the calendar years 1964 and 1965. At all times relevant here petitioners Joe H. Nakayama (Joe) and Terry Nakayama (Terry), husband and wife, resided in Las Cruces, New Mexico. They filed joint Federal income tax returns for the calendar years 1964 and 1965. Carl and Joe are brothers, who, in 1958, along with two other brothers, Roy Nakayama (Roy), and John Nakayama (John), were partners in a partnership known as J. K. Nakayama and Sons (hereinafter "land partnership"). Its partnership returns were filed on a fiscal year basis ending March 31. Prior to March 31, 1965, Carl and Joe maintained respectively a 45 percent and 25 percent interest in the partnership. Thereafter, in consideration of one acre of land to Roy and nothing to John the two brothers relinquished their respective interests. As a result the two remaining brothers *230 became 50 percent partners each. In 1958 Carl and Joe organized J. K. Nakayama and Sons, Inc., (hereinafter "operating corporation"), [1] a corporation filing its Federal income tax returns on a fiscal year basis ending March 31, and whose principal place of business was located in the state of New Mexico. The operating company engaged in farming tracts of land. It leased real and personal property for its activities from the land partnership and another family owned corporation styled Nakayama Farms, Inc., (hereinafter "land corporation") [2]
Although it was a cash basis taxpayer, the operating corporation accrued annually and deducted as an expense the rents due to the land partnership. [3] The land partnership reported the rental income on its tax return as income. It was subsequently accounted for by Carl and Joe on their separate Federal income tax returns in amounts representing their respective shares of partnership *231 income. The appropriate bookkeeping entries being made, no monetary sums were actually transferred to the partnership. It was also the practice of the operating corporation, at Carl's direction, to pay certain personal expenses of both Carl and Joe from corporate funds. The expenditures were recorded by the corporation in accounts titled respectively "Accounts Receivable - Carl" and "Accounts Receivable - Joe". Such amounts were offset in each year by the rentals due to Carl and Joe as partners in the land partnership. Rather than settle the accounts at the end of each fiscal year the balance that either the corporation owed to Carl and Joe or Carl and Joe owed to the corporation was carried forward to subsequent years to be used in determining any offset in the following years. The chart below indicates the relationship between the rent owed by the operating corporation to the land partnership and the operating corporation's payments of the personal expenses of the partners of the land partnership. (1)
(2)
(3)
(4)
(5)
PERSONAL
EXPENSE
PAID BY
BALANCE
OPERATING
GROSS RENT
CORPORATION
OPERATING
PARTNER'S
PARTNER'S
ATTRIBUTABLE
AND CHARGED
CORPORATION
TO
FISCAL
SHARE OF
PERCENTAGE
TO EACH
ACCOUNTS
OWES EACH
RECEIVABLE
YEAR
PARTNER
INCOME
INTEREST
PARTNER
(LESS
PARTNER
ENDING
CERTAIN
CREDITS)
3-31-59
Carl T.
$ 5,293.77
45
$ 9,000.00
(2,316.96)
$ 11,316.96
Joe H.
2,940.98
25
5,000.00
(1,214.32)
6,214.32
John K.
1,764.59
15
3,000.00
NA
3,000.00
Roy M.
1,764.59
15
3,000.00
NA
3,000.00
$ 11,763.93
100
$ 20,000.00
3-31-60
Carl T.
0
45
$ 3,705.17
$ 2,347.40
$ 12,674.73
Joe H.
0
25
2,058.43
(2,738.18)
11,010.93
John K.
0
15
1,235.06
72.24
4,162.82
Roy M.
0
15
1,235.06
NA
4,235.06
0
100
$ 8,233.72
3-31-61
Carl T.
NA
45
$ 3,705.17
$ 8,231.82
$ 8,148.08
Joe H.
NA
25
2,058.43
5,118.38
7,950.98
John K.
NA
15
1,235.06
639.20
4,758.68
Roy M.
NA
15
1,235.06
592.33
4,877.79
100
$ 8,233.72
3-31-62
Carl T.
$ 11,577.17
45
$ 14,850.00
$ 4,267.52
$ 18,730.56
Joe H.
6,431.77
25
8,250.00
1,267.21
14,933.77
John K.
3,859.06
15
4,950.00
NA
9,708.68
Roy M.
3,859.06
15
4,950.00
0
9,827.79
$ 25,727.06
100
$ 33,000.00
3-31-63
Carl T.
$ NA
45
$ 2,149.13
$ 12,336.70
$ 8,542.99
Joe H.
NA
25
1,193.96
4,072.30
12,055.43
John K.
NA
15
716.38
NA
10,425.06
Roy M.
NA
15
716.38
0
10,544.17
100
$ 4,775.85
3-31-64
Carl T.
$ 4,794.02
45
$ 6,750.00
$ 15,367.90
$ (74.91)
Joe H.
2,663.34
25
3,750.00
13,490.48
2,314.95
John K.
1,598.00
15
2,250.00
NA
12,675.06
Roy M.
1,598.00
15
2,250.00
1,390.63
11,403.54
$ 10,653.36
100
$ 15,000.00
3-31-65
Carl T.
$ 1,480.40
50
$ 3,600.00
$ 6,772.07
[3,246.98)
Joe H.
1,480.39
50
3,600.00
19,730.57
(13,815.62)
$ 2,960.79
100
$ 7,200.00
3-31-66
Carl T.
$ 6,758.69
50
$ 6,962.50
$ 8,018.14
[4,302.62)
Joe H.
6,758.69
50
6,962.50
6,049.38
(12,902.50)
$ 13,517.38
100
$ 13,925.00
*232 Note: NA means not available For the period April 1, 1964 to December 31, 1964 the operating corporation paid the personal expenses [4] of Carl and Joe in the following amounts: Carl
$ 2,188.28
Joe
18,307.03
In the calendar year 1965 the operating corporation paid the personal expenses [5] of Carl and Joe in the following amounts: Carl
$ 10,984.32
Joe
5,395.45
In subsequent years the internal revenue service conducted audits with regard to the personal expenses paid by the operating corporation on behalf of Carl and Joe. As a result respondent determined, by statutory notices both dated October 26, 1970, that the payments indicated above in 1964 and 1965 were taxable dividends to the petitioners. [6] Further, respondent concluded that an amount of $ 450.00 should be added to the above figures for said years representing *233 personal expenses paid by the corporation but not reflected on the corporation's books of account. At trial respondent made the following concessions: 1964
Carl
Joe
PERSONAL EXPENSES PAID
BY OPERATING CORPORATION
4-1-64 THRU 12-31-64 [1]
$ 2,638.28
$ 18,757.03
OPERATING CORPORATION
OWED LAND PARTNERSHIP
FOR RENT
BALANCE AS OF 4-1-64 [2]
0
2,314.95
RESPONDENT'S DETERMINATION
OF DIVIDEND FOR CALENDAR
YEAR 1964
$ 2,638.28
$ 16,442.08
1965
PERSONAL EXPENSES PAID
BY OPERATING CORPORATION
1-1-65 THRU 12-31-65 [3]
$ 11,434.32
$ 5,845.45
OPERATING CORPORATION
OWED LAND PARTNERSHIP
FOR RENT
BALANCE AS OF 3-31-65 [4]
3,600.00
3,600.00
RESPONDENT'S DETERMINATION
OF DIVIDEND FOR CALENDAR
YEAR 1965
$ 7,834.32
$ 2,245.45
*234 OPINION The issue for decision is whether certain amounts paid by the operating corporation on behalf of its shareholders from April 1, 1964 through December 31, 1965, less certain offsets, constituted distributions equivalent to the payment of dividends as the respondent has determined, [7] or, as petitioners contend, loans from the corporation. The resolution of the issue is dependent upon a factual determination on our part as to whether the parties intended to create a bona fide creditor-debtor relationship at the time of the disbursement of the corporate funds. Electric & Neon, Inc.,56 T.C. 1324 (1971) affd. per curiam 496 F.2d 876 (5th Cir., 1974); Berthold v. Commissioner,404 F.2d 119 (6th Cir., 1968) affg. a Memorandum Opinion of this Court; Chism's Estate v. Commissioner,322 F.2d 956 (9th Cir., 1963) affg. sub nom Chism Ice Cream Co., a Memorandum Opinion of this Court. Crucial to this inquiry is whether there was an actual *235 intent that the money advanced be repaid. Livernois Trust v. Commissioner,433 F.2d 879 (6th Cir., 1970) affg. a Memorandum Opinion of this Court. Commissioner v. Makransky,321 F.2d 598 (3d Cir., 1963) affg. 36 T.C. 446 (1961); Clark v. Commissioner,266 F.2d 698 (9th Cir., 1959) affg. in part and revg. in part a Memorandum Opinion of this Court. If no reasonable expectation of repayment existed at the time the money was disbursed dividend treatment of the advanced sums would be deemed appropriate for tax purposes. See Noble v. Commissioner,368 F.2d 439, 443 (9th Cir., 1966) affg. a Memorandum Opinion of this Court. After closely reviewing all the facts and circumstances in the matter before us, we hold that the personal expenses of the petitioners paid by the operating corporation in the period noted above, constituted loans to the petitioners. At the time these funds were disbursed the parties concerned reasonably expected the amounts advanced to be repaid. We have made the above determination on the basis of the credible and forthright testimony of petitioners indicating their *236 intent to repay the advances from the operating corporation. Further, we have found this testimony consistent with the established bookkeeping and accounting practices engaged in by the operating corporation and petitioners as previously rehearsed herein. For these reasons we think it quite clear that at the time of the disbursement of the corporate funds in question, petitioners intended these amounts to be repaid by way of offsets to amounts subsequently due to them as rental payments. Moreover, although we by no means condone the informality of the relationship between the operating corporation and petitioners with regard to the transfer of funds, it does not militate against this holding for petitioners. [8]Carl L. White,17 T.C. 1562 (1952). Decision will be entered for the petitioners.
Footnotes
1. The shares of stock of the operating corporation were owned in the following percentages: ↩
Carl
75%
Joe
25%
2. The shares of stock of the land corporation were owned in the following percentages: ↩
Carl and Toshi
51%
Joe
49%
3. The amounts owed to the land corporation were also accrued and deducted by the operating corporation.↩
4. Neither Carl nor Joe gave a promissory note to the operating corporation; neither promised to repay the corporation by a definite date; no interest was paid by or charged to petitioners by the operating corporation; nor was any collateral given by Carl or Joe to the operating corporation.↩
5. See footnote 4, supra.↩
6. A further result of the audit was that the operating corporation ceased its practice of paying the personal expenses of Carl and Joe. In addition, on March 9, 1973, Carl and Joe repaid the corporation all sums outstanding as of that date for personal expenditures paid by the corporation which had not been previously offset. ↩
1. Includes the $ 450.00 amount noted above. ↩
2. See Column 5 of chart on page 7. ↩
3. Includes the $ 450.00 amount noted above. ↩
4. See Column 3 of chart on page 7↩
7. The amount to be treated as a dividend is necessarily limited by the available earnings and profits of the corporation. See secs. 301 and 316, I.R.C. of 1954↩.
8. We note that no security was given, no interest paid, nor notes signed either by the corporation when in the position of debtor or the petitioners when indebted to the corporation.↩