JOHN C. AMIS, JR. and GEMAE AMIS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Amis v. Commissioner
Docket Nos. 17251-81, 22572-81, 10878-82, 11601-82.
United States Tax Court
T.C. Memo 1984-642; 1984 Tax Ct. Memo LEXIS 35; 49 T.C.M. (CCH) 281; T.C.M. (RIA) 84642; December 10, 1984. John C. Amis, Jr., pro se. Stephen R. Takeuchi and Willie Fortenberry, for the respondent. SCOTT MEMORANDUM FINDINGS *38 OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1977 and 1978 as follows: Calendar
Petitioners
Year
Deficiency
John C. Amis, Jr. and
1977
$63,881.70
Gemae Amis
John C. Amis, Jr. and
1978
9,852.32
Gemae Amis
Amey and Monge, Inc.
1977
42,086.00
Amey and Monge, Inc.
1978
17,702.51
The issues for decision are as follows: (1) Whether corporate petitioner during 1977 and 1978 made payments to the individual petitioners or made payments for their benefit from its corporate bank accounts at the Exchange National Bank and the Lee County Bank, resulting in the characterization of such payments as taxable dividends pursuant to section 301(c)(1); [2] (2) whether individual petitioners are entitled to an investment tax credit of $691 in 1977; (3) whether individual petitioners are entitled to a new jobs credit of $108 in 1977; and (4) whether corporate petitioner is entitled to deduct in 1977 and 1978 amounts expended for repairs, rental payments, taxes, interest, depreciation, advertising, contributions, and other business expenses. *39 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, John C. Amis, Jr., and Gemae Amis, husband and wife, resided in Bonita Springs, Florida, at the time of the filing of the petition in this case and filed joint Federal income tax returns for calendar years 1977 and 1978 with the Internal Revenue Service Center, Chamblee, Georgia. Petitioner, Amey and Monge, Inc., is a corporation duly organized under the laws of the State of Florida. At the time of the filing of its petition in this case, petitioner maintained its principal place of business in Ft. Myers, Florida. Petitioner filed its Federal income tax return for calendar years 1977 and 1978 with the Internal Revenue Service Center, Chamblee, Georgia. During the years 1977 and 1978, petitioner John C. Amis, Jr. (Mr. Amis) was secretary and principal officer of Amey and Monge, Inc., and Carlos Monge and David Starnes were both major shareholders of Amey and Monge, Inc. Carlos Monge was also a corporate officer of Amey and Monge, Inc., during this time. Amey and Monge, Inc., had checking accounts at the Exchange National Bank and Lee County Bank during 1977 and 1978. *40 During 1977 and the first half of 1978, Amey and Monge, Inc., was engaged in the engineering and land surveying business and had its offices at 3605-3607 Hanson Street, Fort Myers, Florida. Amey and Monge, Inc., had telephones in its offices and owned trucks which were sometimes used by engineers and surveyors to transport survey crews to the work sites of projects on which Amey and Monge, Inc., was working. Amey and Monge, Inc., supplied the fuel for these trucks. Sometimes gasoline was put into the company trucks and payment made with a credit card that was in Mr. Amis' name. There was a service station in Fort Myers, Florida, at which Amey, Inc., a corporation of which Mr. Amis was sole shareholder, had a charge account. Sometimes employees of Amey and Monge, Inc., obtained gasoline for Amey and Monge, Inc., at the service station and charged the gasoline to the account of Amey, Inc. Amey and Monge, Inc., also used trucks in its business registered in the name of Amey, Inc. Amey and Monge, Inc., used blueprinting machines belonging to Amey, Inc., in its business operations and also purchased blueprints from outside firms. When Amey and Monge, Inc., began operations, Amey, *41 Inc., advanced funds for expenses until Amey and Monge, Inc., had sufficient revenue to pay its own expenses and could repay Amey, Inc. Amey and Monge, Inc., agreed to pay rent to Amey, Inc., for use of its offices. Mr. Amis used his personal automobile in his work for Amey and Monge, Inc. Mr. Amis and Amey, Inc., furnished office supplies to Amey and Monge, Inc. Amey and Monge, Inc., also used drafting machines belonging to Amey, Inc. Mr. Monge had a Buick Skylark automobile that he used in the business of Amey and Monge, Inc., which was later acquired by Amey and Monge, Inc.
The offices of Mr. Amis' personal businesses, Gulf Maps, Bonita Realty, and his wholly owned corporation, Amey, Inc., were also located at 3605 and 3607 Hanson Street. The following chart illustrates the utility bills, gasoline bills, accounting bills and miscellaneous bills that were paid out of the corporate bank accounts of Amey and Monge, Inc., during 1977: Utility
Gasoline
Accounting
Miscellaneous
Billed Party
Bills
Bills
Bills
Bills [1]
John C. Amis,
$ 125.00
Jr. and
Gemae Amis
John C. Amis,
[2] $1,085.87
$1,889.23
[3] 687.69
$ 6,275.66
Jr.
Gemae Amis
35.00
1,265.24
Martha Amis
414.30
Doug Amis
25.00
Amey and Monge,
17.79
610.00
249.82
Inc.
Amey, Inc.
765.66
35.62
1,565.00
4,164.29
Amey Engineering
122.49
Bonita Realty
410.00
2670 Maple [4]
51.52
3605 Hanson
Street [5]
1,625.18
3607 Hanson
558.33
Street [5]
Goodwin Street [6]
252.50
Leitner Lane [7]
1,025.34
2958 Crawford [4]
104.43
Gulf Maps
198.51
Broadway Mobile
485.00
Home Village
Total
$5,702.34
$3,622.18
$3,472.69
$11,247.26
*42 The following payments were made out of the bank account of Amey and Monge, Inc., at the Exchange National Bank during 1978: Date
Check No.
Amount
Payee
1/78
1822
$20,000
Amey, Inc.
1/78
1839
307
Benson Insurance
Agency (BIA)
At least $100 of the payment to BIA was on a Buick Skylark. On their Federal income tax return for taxable year 1977, [3] petitioners, Mr. and Mrs. Amis, claimed an investment credit in the amount of $691 and a new jobs credit in the amount of $108. *43 On its Federal income tax return for taxable year 1977, petitioner, Amey and Monge, Inc., claimed the following deductions: Item
Amount
Compensation of Officers
[4] $ 37,187.00
Salaries and Wages
[5] 27,741.30
Repairs
461.45
Rents
1,092.00
Taxes
820.17
Contributions
75.00
Depreciation
169.87
Advertising
138.47
Other Deductions
* 46,321.32
Total
[6] $ 114,006.58
*44 On its Federal corporate income tax return for taxable year 1978, petitioner, Amey and Monge, Inc., claimed the following deductions: Item
Amount
Salaries and Wages
[7] $18,085.63
Repairs
168.42
Rents
22,172.00
Taxes
2,878.98
Interest
443.84
Depreciation
145.60
Advertising
1,025.70
Other Deductions
* 32,748.38
Total
[8] $77,668.55
In his statutory notice of deficiency issued to petitioners Mr. and Mrs. Amis *45 for taxable year 1977, respondent made adjustments with respect to petitioners' reported income and deductions with the following explanations: a. During 1977 Amey-Monge, Inc. made payments to you or for your benefit as summarized below. Such items are dividend income to you and income is accordingly increased: From
Ameg-Monge, [sic] Inc. Account
- Exchange National Bank
$28,898.53
- Lee County Bank
5,238.40
Total
[9] $34,136.93
b. The dividend exclusion is allowed. * * * The investment credit of $691.00 and the new job's credit of $108.00 deducted on your return are not allowed as a credit as you have not verified that you qualify for these. *46 In his statutory notice of deficiency issued to Mr. and Mrs. Amis for taxable year 1978, respondent made additional adjustments with respect to petitioners' reported income and deductions with the following explanation: During the taxable year 1978, Amey-Monge, Inc. corporation made certain payments to you or for your benefit and/or permitted you to use corporate property without compensation.It is determined that such items comprise dividend income under sections 301 and 316 of the Internal Revenue Code and are includable in your gross income in the following amounts: Check
Date Paid
Number
Paid To
Amount
1/9/78
1822
Amey, Inc.
$20,000
1/11/78
1839
BIA
100
Total
$20,100
Less Dividend Exclusion
100
Taxable Income Increased
$20,000
In his statutory notice of deficiency issued to petitioner, Amey and Monge, Inc., for taxable years 1977 and 1978, respondent determined that the deductions corporate petitioner claimed for taxable years 1977 and 1978 in the amounts of $111,940.58 and $77,668.55, [10] respectively, were not allowable because petitioner failed to substantiate: (1) that these expenditures were incurred; (2) *47 that the expenditures were incurred for the purpose designated; or (3) that the alleged expenses are deductible pursuant to sections 162, 167, or any other section of the Internal Revenue Code. OPINION 1. Constructive Dividends.
The first issue for decision is whether Mr. and Mrs. Amis received dividend income in 1977 and 1978 in the amounts of $19,439.18 and $20,100, respectively, because of their personal obligations being satisfied out of the corporate bank accounts of Amey and Monge, Inc. Respondent takes the position that in 1977 and 1978 the corporate bank accounts of Amey and Monge, Inc., were used to pay the personal expenses of Mr. and Mrs. Amis, their family, Mr. Amis' personal businesses, Bonita Realty and Gulf *48 Maps, and Mr. Amis' solely owned corporation, Amey, Inc. [11] In respondent's view, Mr. and Mrs. Amis failed to demonstrate that the payments out of the corporate bank accounts were directly connected to the business activities of Amey and Monge, Inc., and that such use of corporate funds for the personal benefit of Mr. and Mrs. Amis, their family and Mr. Amis' businesses results in a taxable dividend to them. Petitioners take the position that they did not receive dividend income in the amount of $19,439.18 in 1977 because the payments Amey and Monge, Inc., made to Amey, Inc., in 1977 constituted in some instances payments of expenses of Amey and Monge, Inc., and in other instances monthly lease payments and thus were not dividend income to petitioners. Petitioners take the position that they did not receive dividend income in the amount of *49 $20,100 in 1978 because check No. 1822 paid by Amey and Monge, Inc., to Amey, Inc., in the amount of $20,000 was repayment of a loan that Amey, Inc., had made to Amey and Monge, Inc., and thus did not constitute a dividend to petitioners. Petitioners further take the position that check No. 1839 dated January 11, 1978, in the amount of $100 was a payment by Amey and Monge, Inc., to BIA for expenses of Amey and Monge, Inc. Petitioners contend that this did not constitute a taxable dividend to them because they did not have any personal insurance with BIA and the $100 payment constituted a deductible business expense incurred to insure an automobile used by Amey and Monge, Inc., in its trade or business. Petitioners explain that it would have been impossible for Amey and Monge, Inc., to pay the personal expenses of Mr. and Mrs. Amis in 1977 and 1978 because the corporation was unable to pay even its own expenses and existed solely on loans from Amey, Inc., or Mr. Amis. The loans were deposited into the bank accounts of Amey and Monge, Inc., and were then used by Amey and Monge, Inc., to satisfy the corporation's financial obligations. It is well settled that it a corporation *50 satisfies a personal obligation of its shareholder or makes a payment for a shareholder's benefit, such payment may constitute a constructive dividend to that shareholder to the extent of available earnings and profits. Yelencsics v. Commissioner,74 T.C. 1513, 1529 (1980); Smith v. Commissioner,70 T.C. 651, 668 (1978); Sachs v. Commissioner,32 T.C. 815, 820 (1959), affd. 277 F.2d 879, 882 (8th Cir. 1960), cert. denied 364 U.S. 833 (1960). This result is true even if the formalities of a dividend are lacking or if the distribution is not recorded on the corporate books. Yelencsics,supra at 1529; Silverstein v. Commissioner,36 T.C. 438, 443 (1961). A dividend may result even if the corporation does not intend to confer an economic benefit upon the shareholder. Loftin and Woodard, Inc. v. United States,577 F.2d 1206, 1214 (5th Cir. 1978); Silverstein,supra at 443. Under section 61(a)(7), gross income includes the receipt of any dividend. A dividend is defined in section 316(a) as "any distribution of property made by a corporation *51 to its shareholders." The amount of a constructive dividend is equal to the amount of money received or the fair market value of the benefits conferred. Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 663 (1962); section 301(b)(1)(A). In our view, corporate petitioner, Amey and Monge, Inc., used some funds from its corporate bank accounts to satisfy the personal obligations of Mr. and Mrs. Amis as well as Mr. Amis' sole proprietorships, Bonita Realty, Gulf Maps, Broadway Mobile Home Village and Mr. Amis' solely owned corporation, Amey, Inc. Petitioners, Mr. and Mrs. Amis, received dividend income in 1977 and 1978 to the extent they received an economic benefit from the corporation. The effect of the satisfaction of personal obligations of petitioners out of the corporate bank accounts was essentially equivalent to the corporation paying petitioners a dividend directly. Petitioners received the benefit of being relieved of their obligation to satisfy personal debts and therefore received constructive dividends in that amount. The record also reflects, however, that Amey and Monge, Inc., satisfied some of its own business expenses in 1977 *52 out of the corporate bank accounts and these amounts would not constitute dividend income to Mr. and Mrs. Amis. The record clearly shows that the following business expenses of Amey and Monge, Inc., were satisfied in 1977 out of its corporate bank accounts: Gasoline Bills
$ 17.79
Accounting Bills
610.00
Miscellaneous Bills
249.82
Total
$877.61
Although respondent has conceded that not more than $19,439.18 of dividends were received by Mr. and Mrs. Amis from Amey and Monge, Inc., in 1977, an addition of the remaining payments by Amey and Monge, Inc., shows the following: Utility Bills [12]
$ 5,702.34
Gasoline Bills
3,604.39
Accounting Bills
2,862.69
Miscellaneous Bills
10,997.44
Total
$23,166.86
*53 There is therefore a discrepancy of $4,605.29 which is unaccounted for even under respondent's contentions. This and other evidence in the record leads us to conclude that we cannot determine the amount of payments by Amey and Monge, Inc., to Mr. Amis or for his benefit in the year 1977 which were dividends without considering to some extent the proper deductions for Amey and Monge, Inc., in that year, although this question is discussed in more detail later. As Mr. Amis argues, it is unrealistic to assume that Amey and Monge, Inc., had no expenses other than salaries and wages. However, this assumption does not substitute for proof. Fortunately, there is in the record sufficient evidence to show that Amey and Monge, Inc., did pay expenses other than salaries and wages in 1977 and that some of these payments were by checks included by respondent in the amounts he contends were dividends to Mr. Amis. The evidence is not precise, but in accordance with the holding in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we have used our best judgment to estimate these amounts based on the evidence available to us. The record shows that some of the gasoline *54 bills paid for by Amey and Monge, Inc., which were in the name of Amey, Inc., or Mr. Amis, were actually for gasoline used for the business of Amey and Monge, Inc. From a review of the records and the testimony, we conclude that of the $3,604.39 of gasoline bills paid for Mr. Amis and his family and Amey, Inc., $2,000 represented expenses of Amey and Monge, Inc., which are deductible by the corporation and not dividends to Mr. Amis. The record shows that Amey and Monge, Inc., occupied the same premises with Mr. Amis' private businesses at 3605 and 3607 Hanson Street. The record shows that over $1,800 of the utility bills paid by Amey and Monge, Inc., and charged as dividends to Mr. Amis were for utilities at 3605 or 3607 Hanson Street. We therefore conclude that at least $1,800 of the $5,702.34 of utility bills respondent charges to Mr. Amis as dividends from Amey and Monge, Inc., were paid by Amey and Monge, Inc., on its own behalf and are deductible by Amey and Monge, Inc., and not dividends to Mr. Amis. There was an agreement that Amey and Monge, Inc., pay rent to Amey, Inc., but we can identify no such payment other than utility bills. We cannot actually identify *55 accounting bills paid by Amey and Monge, Inc., for its own account in excess of the amount previously found. However, there are some indications in the record that other such bills were for Amey and Monge, Inc., and numerous indications of miscellaneous bills paid by Amey and Monge, Inc., for its own account. In our view, the evidence is sufficient to show that at least the discrepancy of $4,605.29 is covered by miscellaneous expenses properly deductible by Amey and Monge, Inc., and not chargeble as dividends to Mr. Amis. Therefore, of the $10,997.44 of miscellaneous expenses paid by Amey and Monge, Inc., $4,605.29 were paid for its own account and were not dividends to Mr. Amis. We therefore conclude that Amey and Monge, Inc., paid amounts to Mr. Amis or for his benefit in 1977 totaling $14,761.57. [13] Petitioners have failed to show that the $14,761.57 paid to them or for their benefit by Amey and Monge, Inc., was not properly determined to be a dividend to them. For taxable year 1978, we conclude that petitioners received *56 constructive dividends in the amount of $20,000. [14] Petitioners have presented his Court with no evidence to support their explanation that the $20,000 payment constituted a loan repayment by Amey and Monge, Inc., to Amey, Inc. The record is devoid of evidence to support even the existence of the alleged loan and petitioners thus received a construction dividend in the amount of $20,000. Although the evidence is meager, we conclude that the $100 payment to BIA by Amey and Monge, Inc., constituted an amount paid to insure an automobile [15] used by Amey and Monge, Inc., in its trade or business and therefore was not a dividend to Mr. Amis. Thus we conclude that petitioners received a constructive dividend in 1978 in the amount of $20,000 from Amey and Monge, Inc. *57 2. Investment Tax Credit.
Petitioners Mr. and Mrs. Amis claimed an investment tax credit in the amount of $691 on their 1977 individual income tax return. Section 38 allows a credit against income taxes for certain depreciable property. Section 48(a) defines "section 38 property" to include only property with respect to which depreciation (or amortization) is allowable. Section 167(a) allows a depreciation deduction only for property used in a trade or business or held for the production of income. In respondent's view, petitioners failed to establish the purchase date of the property, depreciable basis of the property, useful life of the property or its reasonable connection or use in petitioner's trade or business, and therefore respondent determined that petitioners were not entitled to the investment credit. We agree with respondent and we hold that petitioners, Mr. and Mrs. Amis, have failed to prove that the property was used in their trade or business or held for the production of income. We therefore conclude that the investment credit is not allowable. 3. New Jobs Credit.
On their 1977 income tax return individual petitioners claimed a partner's *58 new jobs credit in the amount of $108. The new jobs credit was enacted by Congress in 1977 to stimulate the job market by giving employers a tax incentive to hire new employees in 1977 and 1978. Section 44B allows employers an income tax credit for wages paid to or incurred for certain newly hired employees. See Metallics Recycling Co. v. Commissioner,79 T.C. 730, 736 (1982), affd. 732 F.2d 523 (6th Cir. 1984). The new jobs credit is available to employers who satisfy certain requirements. [16]
Sections 51 and 52 provide the methods of determining whether an employer is entitled to a credit and, if so, in what amount. *59 Under section 51(a)(1), an employer which paid unemployment insurance wages in 1977, in an amount that exceeded 102 percent of the unemployment insurance wages it had paid in 1976, was entitled to a new jobs credit equal to 50 percent of the excess, subject to certain limitations as provided in section 53. Section 51(f)(1) proovides further that the term "unemployment insurance wages" has the meaning given to the term "wages" by section 3306(b) (hereinafter called FUTA wages). Pursuant to section 51(g)(1), in order for the employer to qualify for the new jobs credit more than one-half of the remuneration paid by the employer to the employee must be paid "for services performed in the United States in a trade or business of the employer." In respondent's view, petitioners failed to establish that their specific employees were certified members of particular "targeted groups" as required in section 51(d). Therefore, respondent determined that petitioners were not entitled to claim the new jobs credit. We do not address respondent's argument. In our view, petitioners Mr. and Mrs. Amis have failed to prove that the new jobs credit claimed in 1977 represents an increase *60 in FUTA wages for 1977 over 102 percent of the FUTA wages for 1976. Section 51(a)(1). Petitioners have failed to establish that they paid any wages in 1977 for services performed in their trade or business. See section 51(g)(1). Therefore we hold that petitioners are not entitled to the new jobs credit of $108 claimed in 1977. 4. Deduction of Expenses.
On its corporate return for taxable years 1977 and 1978, petitioner, Amey and Monge, Inc., claimed deductions in the amount of $114,006.58 and $77,668.55, [17] respectively, for salaries and wages, repairs, rents, taxes, interest, contributions, depreciation, advertising and "other deductions." Section 162(a) allows as a deduction all ordinary and necessary expenses in carrying on a trade or business. Petitioner has the burden to prove that it is entitled to such a deduction. The burden of clearly showing the right to a claimed deduction is on the taxpayer. Interstate Transit Lines v. Commissioner,319 U.S. 590, 593 (1943); Rule 142, Tax Court Rules *61 of Practice and Procedure.
Respondent maintains that petitioner, Amey and Monge, Inc., has not met its burden of proof in this instance. As we have previously stated, the proof of any deductions other than those conceded by respondent is not precise, but the record is sufficient to show that Amey and Monge, Inc., is entitled to some business expense deductions other than the salaries and wages conceded by respondent. Based on the record as a whole and using our best judgment, we conclude that for 1977 Amey and Monge, Inc., is entitled to deduct in addition to the amounts conceded by respondent the following: Truck and automobile expenses
$ 2,000.00
Utilities (which is the only
rental expense we find)
1,800.00
Accounting expense
610.00
Miscellaneous expenses, including
blueprints, business registrations,
office supplies, insurance and
similar items
4,605.29
Payroll taxes
4,818.62
Total
$13,833.91
The evidence is even more sparse for 1978 than for 1977. However, based on the record and considering the items shown as deductible in 1977, we conclude that Amey and Monge, Inc., is entitled to the following deductions in addition to the *62 salaries conceded by respondent: Accounting and legal expenses
$ 600.00
Automobile and truck expenses
1,893.39
Insurance
100.00
Payroll taxes
1,000.00
Miscellaneous, including blueprints,
office expenses and similar items
3,000.00
Rent, including utilities
1,800.00
Total
$8,393.39
Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Amey and Monge, Inc., docket No. 22572-81; John C. Amis, Jr. and Gemae Amis, docket No. 10878-82; and Amey and Monge, Inc., docket No. 11601-82.↩
2. Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
1. The miscellaneous bills include but are not limited to hotel bills, florists bills, bills for blueprints, telephone bills, etc. ↩
2. Includes all bills to A. Amis, c/o John C. Amis, Jr. ↩
3. Includes a bill to "The Dome," c/o John Amis. ↩
4. Mr. Amis' personal and business storage areas are located at 2670 Maple Street and 2958 Crawford Street. ↩
5. Amey and Monge, Inc., Gulf Maps, Bonita Realty and Amey, Inc., were located at 3605 and 3607 Hanson Street. ↩
6. Mr. and Mrs. Amis' residence was located at Goodwin Street. ↩
7. Mr. Amis' personal business, Bonita Realty, was located at Leitner Lane.↩
4. In his statutory notice of deficiency, respondent only allowed deductions in the amount of $2,066 for petitioner's compensation of officers. The parties stipulated that petitioner is entitled to deduct in 1977 amounts for compensation of officers as claimed in the amount of $35,121. Since $2,066 allowed in the notice of deficiency and $35,121 total the $37,187 claimed as a deduction for salaries, we conclude that the total deduction to which petitioner Amey and Monge, Inc., is entitled for salaries in 1977 is $37,187. ↩
3. On their Federal income tax return for 1977, petitioners deducted business expenses related to the operation of a sole proprietorship entitled "The Dome" in the following amounts: Item
Amount
Cost of goods sold
$39,161
Depreciation
4,378
Taxes
917
Rent on business property
8,450
Repairs
674
Salaries and wages
5,324
Insurance
2,247
Legal and professional fees
155
Advertising
61
Unilities
3,355
Payroll taxes
619
Supplies
1,328
Miscellaneous
2,478
Bank charges
129
Contract Labor
5,030
Total
$74,306
In his statutory notice of deficiency issued to petitioners for taxable year 1977, respondent increased petitioners' income in the amount of $74,306 to reflect the disallowance of deductions related to the operation of "The Dome." The parties stipulated that petitioners are entitled to deduct in 1977 business expenses related to "The Dome" in the amount of $63,044.03. Petitioners conceded that the remaining expenses in the amount of $11,261.97 are not deductible.↩
5. The parties stipulated that petitioner is entitled to deduct $27,742.30 for salaries and wages in 1977 although petitioner's tax return and the notice of deficiency reveal the amount deducted was $27,741.30. ↩
*. This deduction is composed of the following items: ↩
Accounting and legal $ 1,840.00
Auto and truck
4,886.54
Blue prints
294.18
Contract labor
4,875.37
Dues/subscriptions
705.87
Payroll taxes
4,818.62
Fees -- Director
600.00
Insurance
3,468.27
Light/Power/Utilities
3,301.16
Office
1,490.86
Professional services
8,643.77
Leased equipment
440.00
Supplies
3,532.51
Surveying
141.95
Telephone
1,128.26
Travel
4,121.24
Other
2,032.72
Total
$46,321.32
6. After the agreements of the parties, the amount of deductions left for our consideration in 1977 is $49,077.28.↩
7. The parties agreed that petitioner Amey and Monge, Inc., is entitled to deduct in 1978 expenses in the amount of $18,085.63 for wages and salaries. ↩
*. This deduction is composed of the following: ↩
Accounting and legal
$ 4,545.45
Auto and truck
1,893.39
Blue prints
1,239.36
Contract labor
5,842.94
Dues and subscriptions
362.15
Insurance
1,137.89
Light and power
222.53
Miscellaneous
415.86
Office
928.70
Petty cash
1,083.65
Professional Services
12,099.47
Supplies
578.64
Surveying
474.17
Telephone and telegraph
881.89
Travel
1,042.29
Total
$32,748.38
8. After the agreement of the parties, the amount of deductions left for our consideration in 1978 is $59,582.92.↩
9. The parties agreed that checks totaling $14,697.75 were paid out of the corporate bank accounts of Amey and Monge, Inc., for withholding income taxes and social security taxes of employees and did not constitute dividends to Mr. and Mrs. Amis during 1977. The amount of payments left for our consideration is therefore $19,439.18. The parties did not stipulate the extent, if any, to which the $14,697.75 is deductible by Amey and Monge, Inc., or if any part of this deduction is included in the agreed salary and wage deductions.↩
10. For the year 1977 the disallowed amount constituted the total deductions claimed by Amey and Monge, Inc., except for $2,066 of officers' salaries, and for 1978 constituted the total deductions claimed by Amey and Monge, Inc., essentially taxing that corporation's gross receipts. After concessions by respondent at trial, the amounts of deductions left for our consideration in 1977 and 1978 are $49,077.28 and $59,582.92, respectively.↩
11. In respondent's view, Mr. Amis' use of the funds of corporate petitioner, Amey and Monge, Inc., for his personal benefit was so extensive that Carlos Monge, a corporate officer and shareholder, was prompted to hire David Higgins, a certified public accountant, to conduct an independent investigation of Mr. Amis' actions.↩
12. The parties stipulated that during 1977 and 1978 utility bills were paid out of the corporate bank accounts of Amey and Monge, Inc., for Mr. and Mrs. Amis' residence at Goodwin Street, Mr. Amis' personal business, Bonita Realty at Leitner Lane, Mr. Amis' personal and business storage areas at 2670 Maple Street and 2958 Cranford Street [sic], and for 3605 and 3607 Hanson Street in which Amey and Monge, Inc., had its offices along with Mr. Amis' personal business, Gulf Maps, and his solely owned corporation, Amey, Inc.↩
13. After a dividend exclusion of $100, pursuant to section 116(a), petitioners' taxable income will be increased $14,661.57 for 1977.↩
14. After a dividend exclusion of $100, pursuant to section 116(a), petitioners' taxable income from this dividend will be increased $19,900 for 1978. ↩
15. The record reflects an insurance policy that Amey and Monge, Inc., had with BIA from May 3, 1977, to May 3, 1978. One of the vehicles covered under the $204 total premium was a 1968 Buick Skylark. The record shows that Mr. Monge used the Buick Skylark for business of Amey and Monge, Inc., and later Amey and Monge, Inc., acquired this automobile.↩
16. Sec. 1.44B-1(a)(2), Income Tax Regs., provides: (2) New jobs credit.↩ Under section 44B (as in effect prior to enactment of the Revenue Act of 1978) a taxpayer may elect to claim as a credit the amount determined under sections 51, 52, and 53 (as in effect prior to enactment of the Revenue Act of 1978). Section 280C(b) (relating to the requirement that the deduction for wages be reduced by the amount of the credit) and the regulations thereunder will not apply to taxpayers who do not elect to claim the credit.
17. After concessions by the parties, the amount of deductions in dispute is $49,077.28 and $59,582.92 for 1977 and 1978, respectively.↩